YATES HARWELL V. STATE.

No. 25252. May 23, 1951.
Rehearing Denied October 10, 1951.

Hon. A. O. Newman, Judge Presiding.

*Gib Callaway,* Brownwood, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

GRAVES, Presiding Judge.

Appellant was convicted of murder with malice and his penalty assessed at confinement in the state penitentiary for twelve years.

The facts show that appellant and his wife were separated. There seemed to have been trouble between them. The wife had left the home of the appellant and gone to Hobbs, New Mexico, where her sister resided. After staying there for a few weeks, she was brought back to Brownwood by the deceased, Luther McConnell. She had rented an apartment and was living there with her three-year-old girl, the child of the appellant and herself. The occasion of the killing was at nighttime. Appellant came to the apartment of his estranged wife, and according to his testimony, he found her and the deceased in a compromising position and in the act of adultery. He procured his pistol and fired four shots. The facts seem to show that he fired two shots from the outside of the house through a window in a downward direction, and in a few moments (from three to five minutes) he fired two more shots; and the deceased was found in the apartment suffering from four gunshot wounds and died therefrom within four days. All the wounds were in the back of the rear portion of his body and head.

Appellant's version of the matter was that he had apprehended these parties in the act of adultery when looking through

a window at nighttime; that he procured a pistol, loaded it and came back; that the deceased started towards a table and appellant thought that the deceased was going for his gun, and therefore shot him four times as fast as he could, in self-defense.

These issues of fact were resolved by the jury contrary to the appellant's statement of the act of adultery as well as his statement relative to self-defense and pass out of the case so far as this court is concerned.

Eleven bills of exception appear in the record.

Bill No. 1 complains of certain testimony of Mrs. Trulla Cooper relative to a conversation had between the appellant and his wife in her presence, and the objection made thereto was as follows:

"I object to testimony along that line; it is certainly on an immaterial matter and relating to other offenses than what the defendant is charged with; and it is highly prejudicial and inflammatory."

We think that Mrs. Cooper should have been allowed to testify to any conversation had in her presence between the appellant and his wife that was material to the issue. Confidential communications between husband and wife lose their confidential character when made in the presence of a third person. Not only that, but appellant went into this conversation between himself and his wife at the time she left home to go to her sister in Hobbs, New Mexico, and under Article 728, Vernon's C.C.P., anything further on the question itself is rendered admissible on account of the fact that appellant had gone into a portion thereof.

Bill No. 2 relates to the same proposition as that set forth in Bill No. 1, and the objection to Bill No. 2 is the same as that set out in Bill No. 1.

Bill No. 3 is of little force, and we see no reason for writing thereon except to say that we think the testimony was admissible as leading up to other cogent testimony in the case.

Bill No. 4 is but an effort to cross-examine the appellant upon a certain conversation which he claims took place between himself and his wife at a certain time at the house of Mrs. Honea. We think the state would have a right to cross-examine

him relative to such conversation as had been offered by him in his direct testimony.

Bill No. 5 is in the same condition as the previous bills and the objected-to testimony seems to have been offered to some extent in answer to the proposition that appellant had testified on his direct examination that the reason he killed Luther McConnell was because he broke up his home; that he loved his wife and baby and didn't want it done. This bill seems to be a cross-examination of the appellant on matters that he had offered on his direct examination.

Bill No. 6 relates to the fact that the state's attorney, while questioning a witness relative to the defendant's reputation, asked the following question:

"Did you know he (defendant) stands charged with a felony now, disposing of mortgaged property, in Scurry County?"

This question was objected to by appellant's attorney after the witness had testified that he did not know of the further fact that the appellant had been convicted of cattle theft and sent to the penitentiary from Bosque County. The objection was: "I object to that; the evidence will show that has been filed since this shooting and probably was instituted by persons connected with it." This objection related to the appellant's charge in Scurry County, and the court sustained the objection to this testimony and instructed the jury not to consider the question for any purpose. We are of the opinion, however, that it might have had some bearing upon the credibility of the witness at the time he was testifying.

Bill No. 7 relates to a state's witness, Mrs. Cooper, testifying to a conversation had between appellant and his wife at the time she finally left her home in Andrews County to go to Hobbs, New Mexico. This was offered in contradiction of what appellant had said his wife told him at this certain time; and his testimony relative thereto was as follows:

"At the time this occurred, I did not know positively the real reason for her leaving me, but I thought it. At that very time I believed that Luther McConnell had been paying attention to my wife. I did not know it at that time, but I believed it.

"When my wife left me on that date, she went to Hobbs, New Mexico. On that occasion I begged her to stay with me; and I asked her on that day when she left—She was crying and

I was crying. She walked out the door and turned around and said, 'I may be doing the wrong thing, and I may come back; I love you and you are the sweetest person I ever knew.' I was crying and she was crying."

The testimony of Mrs. Cooper relative to this transaction showed her presence at the time and is entirely different from the defendant's statement on his direct examination. We think same was admissible since it was not a confidential communication between husband and wife because of the fact that it was had in the presence of a third person. See Branch's Ann. P.C., p. 86, sec. 150; also cases cited in 39 Texas Digest, Key 193, pp. 157, 158.

Bill No. 8 relates to a further statement by Mrs. Cooper wherein the defendant said that he went to her home in Hobbs, New Mexico, shortly after their separation and had a conversation with his wife there. Mrs. Cooper was present at that conversation and related the same to the jury; and it was in contradiction of the statement which the defendant had made relative thereto upon his direct examination.

Bill No. 9 relates to a certain conversation testified to by Lucille McConnell, wife of the deceased, who was separated from him at the time but was not divorced. The conversation is as follows:

"He (defendant) came down to see me and asked if I had gotten my divorce. I told him I had not, but it was in process; and he told me that Beth had filed for a divorce; Beth is Elizabeth Harwell. He told me she had filed for a divorce and I was * * * suprised. He did not tell me exactly how long they had been separated, about a month. He told me not to file; to wait. He said, 'Something will happen, you just wait and see, and I will help you.' He said, 'If you don't file it something will happen.' And he said, 'I will help you; I will help you; you wait and see. Don't file for a divorce. You have more coming to you than you have gotten.' I said, 'No, I have been very fairly treated by Luther; he gave me more than half of what he made from his crop; he gave me more than I had coming and I don't want anything more of his property. He was fair to me; he was very honest."

This conversation happened prior to the time of the killing, and we think it was admissible to show malice upon the part of the appellant, and taken in the light of Bill No. 11, which we will

hereafter discuss, it might have shown that at that time the defendant had in contemplation the taking of the life of the deceased.

In Bill No. 10 it is evidenced that appellant was attempting to get a witness to falsify on certain matters pertinent hereto in the event his wife's divorce suit was filed and came up for trial.

Bill No. 11 seems to have gone further into the proposition of the conversation with the wife of the deceased, Lucille McConnell, in which she testified he said to her:

" 'Will you help me if something should happen? You did not get your part in your settlement with Luther and something will happen; I will fix it and if something should happen, will you come and be a witness that you saw Luther with Beth'? He asked me if I would get on the witness stand and testify that I saw Luther and Beth together and I said, 'Why no, I could not testify to that; that would be a lie.' He said, 'Can't you lie, you don't have to always tell the damn truth,' and I said, 'No, I couldn't tell that. That would be a story.' "

This was objected to as prejudicial, inflammatory, immaterial, and not binding on the defendant. We think that the testimony was admissible to show a condition of the appellant's mind in the matter and the previous relationship between the parties. See Art. 1257a, Vernon's Ann. C.C.P. It was also admissible to contradict much of the testimony that appellant had given relative to his kindly feeling towards his wife, as well as that he was trying to get the witness to testify to matters that were not true, so that he might prevail in the event his wife should carry out her threat to file a divorce suit against him.

Finding no error in the record, the judgment is affirmed.

### ON MOTION FOR REHEARING.

MORRISON, Judge.

Appellant predicates his motion for rehearing on the proposition that error was committed by permitting proof 'that defendant had had immoral relations with Lucille McConnell, wife of the deceased." He does not favor us with a designation of the bill of exception which he contends raises this issue, nor does he give us a clue as to where in the record we may find such evidence to support his proposition. We have, however, re-examined the entire record, and we fail to find any such

evidence properly objected to and presented to us in a bill of exception for review.

The original opinion herein discussed each bill of exception separately and we feel properly disposed of the case.

Appellant's motion for rehearing is overruled.