**UNITED STATES of America**

v.

**Jack WOODEN, Jr., Appellant.**

**No. 22773.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 20, 1969.

Decided Nov. 28, 1969.

Mr. Murray S. Simpson, Jr., Washington, D. C. (appointed by this court), for appellant.

Mr. William S. Block, Asst. U. S. Atty., for appellee. Messrs. Thomas A. Flannery, U. S. Atty., Roger E. Zuckerman, Daniel J. Givelber, Asst. U. S. Attys., and Robert P. Watkins, Asst. U. S. Atty., at the time the brief was filed, were on the brief for appellee. Messrs. David G. Bress, U. S. Atty., at the time the record was filed, and John A. Terry, Asst. U. S. Atty., also entered appearances for appellee.

Before FAHY, Senior Circuit Judge, and WRIGHT and ROBB, Circuit Judges.

ROBB, Circuit Judge:

The appellant and Charles Reid were indicted for burglary in the second degree (22 D.C.Code § 1801(b)) (Supp. II, 1969) and grand larceny (22 D.C.Code § 2201). A jury found them guilty of burglary in the second degree and petty larceny. Reid has not appealed.

From the evidence at trial it appeared that the Rio Restaurant on 14th Street, N.W., in Washington, was entered by burglars between the hours of 4:30 A.M. and 9:30 A.M. on Sunday, May 26, 1968. Entrance was gained by cutting a hole in the roof. When the proprietor unlocked the front door and entered the restaurant at about 9:30 on Sunday morning, he found the appellant and Reid standing inside. He testified that Reid had a box of assorted meats in his hands and the appellant was holding two cases of beer. Beside the appellant

was a ladder which apparently had been brought to the restaurant by the thieves and used to descend from the hole in the roof. Reid and the appellant offered no resistance but sat down and waited while the proprietor called the police who came and arrested them.

Inspection of the restaurant disclosed that the burglars had stolen 69 cases of beer, 7 cases of port and whiskey, an amplifier, 5 sets of musical instruments, the proceeds of the cigarette machine and juke box, and assorted meats and canned goods. None of this property, having an aggregate value of some $3,235, was recovered. It appeared that the thieves had departed through the back door which they left open. An iron gate which protected the door had been forced.

The arresting officer testified that shortly after arriving at the precinct the appellant and Reid said they had been walking through the alley in the rear of the restaurant and observing the rear door open had gone in to look around. The appellant testified that he had been at his apartment near the restaurant on Saturday night and until shortly after 9:00 o'clock on Sunday morning, when he and Reid set out in search of some beer. He said that while walking through the alley behind the restaurant they noticed that the rear door of the establishment was wide open and they went in to see if they could purchase beer. Almost immediately they were confronted by the proprietor and arrested. The appellant denied that he had stolen any of the missing property and denied that he had anything in his hands when the proprietor entered. Reid did not testify.

The appellant called a witness, James Bundy, who corroborated the appellant's testimony with respect to his activities on Saturday night and Sunday morning prior to the appellant's departure from his apartment. The appellant's assigned counsel [1] then undertook to question Bundy concerning the appellant's reputation, and the following took place:

"Q. [By appellant's counsel] Mr. Bundy, do you know others in your community who know Mr. Jack Wooden?

"A. Yes, practically everybody in the building. I am the janitor of 24 units and practically everybody in the units knows him because he do favors for them occasionally.

"Q. Have you heard others in your community discuss—

"[The Assistant United States Attorney]: Your Honor, may we approach the bench?

### (AT THE BENCH:)

"[The Assistant United States Attorney]: Fair warning, Mr. [Counsel]. He has got 20 drunk convictions and once you put his character in evidence I can ask this man about each and every one of them.

"[Counsel]: Whose character, the defendant or the witness?

"[The Assistant United States Attorney]: You are starting to put the defendant's character in evidence, aren't you?

"[Counsel]: What does Your Honor have to comment on that?

"THE COURT: I am afraid it is correct.

"[Counsel]: Well, I will withdraw the question. I am letting it go at that.

"THE COURT: All right.

\* \* \* "

■■ We must disagree with the position taken by the prosecutor and the district judge. It is of course true that a witness who testifies to the good reputation of a defendant may be asked on cross examination if, he has heard of certain arrests or convictions of the defendant, the reasoning being that such questions go to the reliability of the witness. But the scope of such cross examination is not unlimited. The im-

1. Not counsel on this appeal.

peaching questions must be tested "by comparison with the reputation asserted", Michelson v. United States, 335 U.S. 469, 483, 484, 69 S.Ct. 213, 222, 93 L.Ed. 168 (1948), and care must be taken to exclude questions which merely tend to traduce and besmirch the defendant, while having no substantial impact on the credibility of the witness. Shimon v. United States, 122 U.S.App.D.C. 152, 352 F.2d 449 (1965); Awkard v. United States, 122 U.S.App.D.C. 165, 352 F.2d 641 (1965).

Judged by these principles and in the context of this case we think that the proposed questions concerning the appellant's twenty convictions for being drunk were impermissible. Had counsel proceeded with his examination of the witness Bundy the testimony given would obviously have related to the reputation of the defendant for honesty and integrity and for peace and good order. We do not believe that convictions for drunkenness are relevant to a reputation for honesty and integrity. Neither can we say that such convictions have any bearing on a reputation for peace and good order, in the context of a prosecution for burglary and larceny. We need not decide what the result might be in a prosecution for being drunk and disorderly. We hold only that cross examination of Bundy concerning the appellant's convictions for drunkenness would have been immaterial and irrelevant to the reputation which the appellant proposed to assert as a defense to the charges against him. In short, the target of such questions would have been the appellant, not the credibility or reliability of his witness. See Aaron v. United States, 397 F.2d 584 (5th Cir. 1968); Travis v. United States, 247 F.2d 130 (10th Cir. 1957); Smith v. Commonwealth, 206 Ky. 728, 268 S.W. 328 (1925); Albertson v. Commonwealth, 312 Ky. 68, 226 S.W.2d 523 (1950).

The government suggests that no prejudice resulted from the ruling of the District Court. We cannot agree. It is plain that the decisive issue before the jury was one of credibility; if the jury had believed the appellant's explanation of his presence in the restaurant he would have been acquitted. The appellant's story was not incredible; indeed, the jury seems to have accepted it, at least in part, by finding him guilty of petty larceny instead of grand larceny and thus indicating a belief that he was not a party to the wholesale looting of the restaurant, but was a late arrival on the scene. In this situation evidence of his good reputation might well have tipped the scales in his favor; for evidence of good reputation standing alone may create a reasonable doubt. See Edgington v. United States, 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467 (1896). The ruling of the district judge, however, effectively foreclosed the introduction of any evidence of the appellant's good reputation, and this we think was clearly prejudicial.

We have considered the appellant's other claims of error and concluded that they are without merit.

Reversed and remanded for a new trial.