**Billy L. PENDERGRAST, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 9566.**

District of Columbia Court of Appeals.

Argued Feb. 4, 1976.

Decided April 18, 1978.

W. Gary Kohlman, Public Defender Service, Washington, D. C., for appellant. Frederick H. Weisberg, Public Defender Service, Washington, D. C., also entered an appearance for appellant.

Frederick A. Douglas, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Stuart M. Gerson and Barry L. Leibowitz, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before KELLY, HARRIS and MACK *, Associate Judges.

Opinion for the court by KELLY, Associate Judge.

KELLY, Associate Judge:

On February 18, 1975, a panel of this court reversed appellant's conviction of second-degree murder because the trial court erroneously refused to instruct the jury on the lesser included offense of manslaughter. *Pendergrast v. United States,* D.C.App., 332 A.2d 919 (1975). In Section IV of the opinion we stated:

> Considering all of the circumstances, this may well be an appropriate case for the government to consent to the entry of a

judgment of guilty of manslaughter on remand, and for the trial court to consider such a final disposition of the proceeding after hearing from both parties. See *United States v. Wharton,* 139 U.S. App.D.C. 293, 303, 433 F.2d 451, 461 (1970). [*Id.* at 927.]

On remand, appellant sought a new trial. At the trial court's suggestion, however, the government moved for an entry of a judgment of guilty of manslaughter. After receipt of memoranda of law from the parties the court entered the judgment of conviction of manslaughter, stating in its order that

> 2. The District of Columbia Court of Appeals reversed the conviction and remanded the matter to this Court. The Court of Appeals directed that, should the government consent, an entry of a judgment of guilty of manslaughter should be made, thereby obviating an essentially purposeless new trial.

The trial court went on to say that "[h]ad the Court of Appeals intended any procedure or resolution of the case other than that set forth in *Wharton,* they [sic] would not have ordered that the *Wharton* case be adhered to."

Appellant's position both before the trial court and here is that this is not an appropriate case in which to apply the *Wharton* procedure. He points out that in our prior opinion at least two more trial errors were recognized[1] and two other alleged errors were not even discussed. Thus errors committed at trial could have influenced the conviction itself (*i. e.,* appellant's guilt or innocence) rather than just the degree of conviction, the only point to which the *Wharton* line of cases speak.[2]

---

\* Associate Judge Austin L. Fickling was originally a member of the division assigned to this case. Upon Judge Fickling's death, because the remaining division members disagreed as to disposition, a third division member was picked by lot by Chief Judge Theodore R. Newman, Jr. Associate Judge Julia Cooper Mack was that third member.

1. *Id.* at 921 n. 1, 926 n. 5.

2. *See United States v. Perkins,* 162 U.S.App. D.C. 321, 498 F.2d 1054 (1974); *United States v. Thomas,* 144 U.S.App.D.C. 44, 444 F.2d 919 (1971); *United States v. Comer,* 137 U.S.App. D.C. 214, 421 F.2d 1149 (1970); *United States v. Bryant,* 137 U.S.App.D.C. 124, 420 F.2d 1327 (1969); *Allison v. United States,* 133 U.S.App. D.C. 159, 409 F.2d 445 (1969); *Hemphill v. United States,* 131 U.S.App.D.C. 46, 402 F.2d 187 (1968).

We agree with appellant and conclude that the reference to *Wharton* in our original opinion was not only confusing but also ill advised,[3] for in that case only the jury instructions were in issue and not the fairness of the trial itself. And this court cannot now, from hindsight, flesh out its original opinion to deal with the alleged errors in such manner as to justify the use of the *Wharton* procedure over appellant's objection.[4] It was possible that on remand, with the government's consent, appellant would have accepted a manslaughter conviction. But when appellant objected and sought a new trial, neither the court nor the government could insist, in the posture of this case, that such judgment of conviction be entered.[5] Appellant is entitled to a fair trial free of reversible error and the trial court should have afforded him that opportunity.[6]

*Reversed and remanded.*

HARRIS, Associate Judge, dissenting:

I find myself in disagreement with the majority, despite the narrow nature of its holding, and accordingly respectfully dissent.

A brief recapitulation of the history of this case is necessary for an understanding of the issue presented. Appellant was found guilty of murder in the second degree after a jury trial. The victim had been struck on the head with a baseball bat, and his death resulted from the blow. Appellant claimed self-defense, contending that he feared for his life because he believed the victim was reaching for a gun.

The original appeal obliged us to consider numerous alleged errors. We reversed on the ground that it was erroneous for the trial court to have refused to instruct the jury on the lesser-included offense of manslaughter. *Pendergrast v. United States,* D.C.App., 332 A.2d 919 (1975). However, rather than merely remanding for a new trial on the murder charge, we left it within the trial court's discretion to enter a judgment of conviction for manslaughter (assuming the government's willingness not to seek a conviction for second-degree murder).

On remand, after receiving argument from both appellant and the government through an oral hearing and written memoranda, the trial court found that "in the interest of justice, no new trial [was] necessary." It then directed entry of a manslaughter judgment.

The current appeal is from that ruling. Appellant argues that such a procedure is unwarranted where, as here, there were additional errors either asserted or found on the initial appeal. The existence of such errors, he contends, requires that he be granted the option of a new trial.

The manner of the passage of the two appeals through this court requires description. The earlier appeal was argued on November 20, 1974. Judge Kelly, the late Judge Fickling, and I comprised the division of the court assigned to the case. The basic opinion-writing responsibility came to me. A proposed opinion was written and circu-

3. Contrary to the trial court's statement, we did not direct an entry of the manslaughter conviction.

4. The *Wharton* remedy was originally fashioned in *Austin v. United States,* 127 U.S.App. D.C. 180, 382 F.2d 129 (1967). Errors at trial were alleged in *Austin,* but they were found to be without merit before remand.

5. Able counsel from the Public Defender Service argues that common sense dictates the conclusion that our language on remand included the option of a new trial if appellant so desired. It is neither appropriate nor helpful, however, to discuss arguable or plausible assumptions about our prior decision.

6. Whatever the relevance or validity of the dissent's law of the case discussion to the question at issue, what we held in our prior opinion is that the Superior Court properly exercised jurisdiction over appellant as an adult and that it was error (1) to deny a request for a lesser included offense jury instruction and (2) to exclude evidence of appellant's reputation for truth and veracity. We did not decide whether the court's error in communicating with the jury without notice to counsel required reversal since reversal was required on the jury instructional flaw.

lated to the other members of the court. Judges Kelly and Fickling specifically approved the draft as circulated, and it was released as an opinion of the court on February 18, 1975. No petition for rehearing (or even for clarification) was filed by appellant, and the opinion attained finality. In such a status, it constituted binding precedent, and could be overturned only by the court sitting en banc. *M. A. P. v. Ryan,* D.C.App., 285 A.2d 310 (1971).

Throughout the course of this criminal proceeding, appellant has been ably represented by staff attorneys of the Public Defender Service. Commendably, they recognized what arguably could be characterized as technical flaws in two footnotes of the February 1975 opinion. (The footnotes are discussed in detail *infra.*) As they had every right to do, they relied upon those arguable flaws to seek a new trial (with its attendant risk of a murder conviction, although appellant already had been released from his Youth Corrections Act commitment) rather than agreeing to the entry of a judgment of guilty of manslaughter.

After the trial court entered the manslaughter judgment, this appeal was noted. The case was assigned to the same division. Oral argument was conducted before Judge Kelly, Judge Fickling, and me on February 4, 1976. Differences of opinion existed, and we were unable to dispose of the case prior to the saddening illness and ultimate death of Judge Fickling in March of 1977. Judge Mack replaced Judge Fickling as a third member of the division. The case was not reargued.

The brief portion of the earlier opinion which sanctioned the possible entry of a manslaughter judgment on remand read in full as follows (332 A.2d at 927):

> The trial court gave full and proper instructions to the jury on appellant's claim of self-defense. That defense was rejected by the jury by its return of a verdict of guilty of murder in the second degree. Considering all of the circumstances, this may well be an appropriate case for the government to consent to the entry of a judgment of guilty of man-

slaughter on remand, and for the trial court to consider such a final disposition of the proceeding after hearing from both parties. *See United States v. Wharton,* 139 U.S.App.D.C. 293, 303, 433 F.2d 451, 461 (1970). Such a result would obviate the necessity for an essentially purposeless new trial.

The newly-constituted majority, agreeing with appellant, now asserts that "the reference to *Wharton* in our original opinion was not only confusing but also ill advised." Irrespective of the rationale of *M. A. P. v. Ryan, supra,* that statement flouts the well-established and unarguably necessary principle "that the decision of an appellate court in a given case is the law of that case and that no question therein decided will be considered in a subsequent appeal in that case." *General American Life Insurance Co. v. Anderson,* 156 F.2d 615, 618–19 (6th Cir. 1946). *See Antonioli v. Lehigh Coal and Navigation Co.,* 451 F.2d 1171, 1178 (3d Cir. 1971), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1608, 31 L.Ed.2d 816 (1972); *see also Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912); *D. C. Federation of Civic Associations v. Volpe,* 148 U.S.App.D.C. 207, 243, 459 F.2d 1231, 1267 (1971), *cert. denied,* 405 U.S. 1030, 92 S.Ct. 1290, 31 L.Ed.2d 489 (1972). While the law of the case doctrine is not inexorable, the power to reopen prior legal pronouncements in a case is used only to prevent a manifest injustice in a clear instance of previous error. *White v. Higgins,* 116 F.2d 312, 317 (1st Cir. 1940).

A close reading of the relevant case law in this jurisdiction reveals that many of the cases which have sanctioned the practice followed in our prior *Pendergrast* opinion also involved multiple challenges to the conduct of the trial. In *Wharton,* the multiple claims of error were alluded to but not resolved because the court's final order vitiated their significance. Several other circuit court cases have examined such claims of error, found that they did not affect the substantial rights of the parties, and utilized the remand procedure now under challenge to cure the more egregious instruc-

tional flaw. *See United States v. Comer*, 137 U.S.App.D.C. 214, 215 n. 1, 421 F.2d 1149, 1150 n. 1 (1970); *Austin v. United States*, 127 U.S.App.D.C. 180, 191, 382 F.2d 129, 140 (1967); *United States v. Perkins*, 162 U.S.App.D.C. 321, 326 and nn. 8 & 10, 498 F.2d 1054, 1059 and nn. 8 & 10 (1974).

After stating that the reference to *Wharton* in our earlier opinion "was not only confusing but also ill advised," the majority takes the following position:

> And this court cannot now, from hindsight, flesh out its original opinion to deal with the alleged errors in such manner as to justify the use of the *Wharton* procedure over appellant's objection. [Footnote omitted.]

Such a view not only is inconsistent with the law of the case doctrine previously discussed, but also is contrary to an express statutory mandate. In what is essentially a codification of the harmless error rule, § 11–721(e) of the D.C.Code provides:

> On the hearing of any appeal in any case, the District of Columbia Court of Appeals shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.

Thus, we are not faced here simply with what I respectfully consider to be an unwarranted change of mind by a member of the original division (joined in by the substituted member of the division), but moreover with an impermissible unwillingness on the part of the majority to consider anew whether the errors alluded to in footnotes one and five of the earlier opinion were harmless.

Unquestionably the errors referred to in the subject footnotes of the February 1975 opinion were not specifically characterized as "harmless." However, our original unanimous decision to utilize the *Wharton* approach constitutes an integral part of the law of the case, and that decision may be reopened only to prevent a manifest injustice in a clear instance of previous error. *White v. Higgins, supra*, at 317. Even assuming that it constituted "a clear instance of previous error" for the original panel not

to have stated affirmatively that the alleged errors discussed in the two footnotes were harmless, we properly could depart from the law of the case doctrine here only if such an omission caused "a manifest injustice" to appellant. Only if the present division of the court is prepared to find that the two errors which previously were dealt with in summary fashion did not constitute harmless error could the original panel's approach be said to have prejudiced appellant and, therefore, constituted "a manifest injustice." Thus, the court now is obligated to engage in a thorough analysis of those two errors, and only if we were to decide that they did not constitute harmless error could we decline to follow the law of the case and reject the previously approved *Wharton* procedure. The majority is unwilling to do so, although the record makes clear the fallacy of its disposition of this case.

In the original *Pendergrast* opinion, we stated that the trial court erred in excluding *in limine* the testimony of a defense witness who was proffered to support appellant's reputation for veracity. 332 A.2d at 921 n. 1. The development of that conclusion now must be examined, for the ruling of the trial court unquestionably constituted only harmless error.

Defense counsel proffered but a single character witness. The initial proffer was stated as follows:

> The witness in question is Benjamin Harris, an employee of the Government Printing Office. * * * The defendant worked during the summer of 1972, June through August, as a summer job with the Government Printing Office. He worked daily, directly with Mr. Harris, who was his supervisor. Mr. Harris did not know him . . . before he came there in June of 1972 or after August of 1972. * * *
>
> Your Honor, I would offer Mr. Harris—of course he can answer all questions in terms of character and reputation, not opinion testimony. I would offer his testimony for the limited purpose of offering character testimony as to how Billie

was during the time, on both sides of the crime, with respect to truth and veracity and peace and good order.

The court responded: "He cannot answer as to truth and veracity because truth and veracity has nothing to do with this case."

Further discussion ensued, and the court recessed to refer to cases cited to it. When the trial judge resumed the proceeding, the following colloquy occurred:

THE COURT: I fail to see where truth and veracity has anything to do with this case. Peace and good order I would accept. That is the first key right there, so I would deny it as to truth and veracity. This also goes to the community in which he lives at the time? The character witness you propose to put on was a man at the place of employment, is that correct?

[DEFENSE COUNSEL]: Yes.

THE COURT: Did he know anything about his community reputation?

[DEFENSE COUNSEL]: No, he did not.

THE COURT: Are you suggesting the only people he knew were these other people, his associates? How many co-workers were there?

[DEFENSE COUNSEL]: Probably five or six.

THE COURT: Five or six people and the period of time from when to when?

[DEFENSE COUNSEL]: From June 1972 through August of 1972.

THE COURT: But this offense took place July 23 [1972].

[DEFENSE COUNSEL]: Yes.

THE COURT: So you are submitting this would be a character reputation witness for peace and good order from June first to August 23.

[DEFENSE COUNSEL]: That is correct.

THE COURT: As to his general reputation in the community?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: Your request is denied.

[DEFENSE COUNSEL]: * * * Your Honor, it does not go to admissibili-

ty but only as to its weight. I submit it as having probative value especially since it overlaps on both sides of the crime and Your Honor stated that peace and good order is highly probative as to the charge here.

THE COURT: No, I said peace and good order, if that is what you proffer, that insofar as this offense is concerned, I would permit the testimony. I didn't say it was probative of anything. You want to put it on to show he is not a violent man. How can you present a witness to this jury as to his reputation [for] being good from June first to July 23, among five people where he worked and who are not from his neighborhood?

\* \* \* \* \* \*

THE COURT: * * * I don't think we should give [the jury] anything that is [not] probative. That is exactly what you are suggesting. If it has anything of substance they are entitled to know. If you want a character witness put someone from the community. That is what I am suggesting, not some employer who had him only a month and a half.

Then, for the first time, defense counsel proffered what the specific nature of Mr. Harris' testimony would have been. With respect to peace and good order, it would have been to the effect that appellant was teased "quite a bit" by his summer co-workers but "never lost his temper." As to veracity, it would have been to the effect that once when appellant wanted to see a football game, he obtained permission to take some time off from work rather than calling in sick. The latter proffered testimony—which was all that was put forth at any point in the trial as to appellant's veracity—not only would not have been probative as to appellant's reputation for veracity, but also would have been inadmissible since a character witness may not testify to specific acts of the defendant to bolster the defendant's credibility. *See United States v. Bishton,* 150 U.S.App.D.C. 51, 57, 463 F.2d 887, 893 (1972).

I have recited the progression of events on this issue in some detail to demonstrate

the harmlessness of the trial court's original erroneous ruling that in a trial for a crime of violence (in which, as here, the defendant takes the stand) no character testimony may be directed to the defendant's reputation in the community for veracity. Where the defendant does testify and credibility is in issue, proper testimony to such effect may be adduced. *See Cooper v. United States,* D.C.App., 353 A.2d 696, 703–04 and n. 14 (1976). In preparing the court's earlier opinion, I concluded that even though the error was harmless, it would be desirable to address the issue and thereby provide guidance in future cases. I did so in footnote one, and, as noted, the other two members of the division concurred in the entire opinion without reservation. The value of such an approach is evident, since even harmless error is error to be avoided in the future.

I turn now to the other footnote in the original decision which is part of the controversy in this appeal. Appellant correctly notes that we left unresolved the question whether the communication between the trial court and the jury which took place without notice to counsel constituted reversal error. A further review of the record leads inexorably to the conclusion that that occurrence also constituted harmless error.

During its deliberations the jury sent the court a note requesting reinstruction on the self-defense issue. Despite the request, the trial court did not alter or even repeat the instructions which previously had been given to the jury in the presence of counsel. The trial court should have notified counsel promptly of the receipt of the jury's note, but it did not. However, the court's failure to have done so does not require reversal. The Supreme Court has recognized that in some circumstances, such conduct may constitute harmless error. *See Rogers v. United States,* 422 U.S. 35, 40, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *see also United States v. Diggs,* 173 U.S.App.D.C. 95, 104, 522 F.2d 1310, 1319 (1975), *cert. denied,* 429 U.S. 852, 97 S.Ct. 144, 50 L.Ed.2d 127 (1976); *Walker v. United States,* 116 U.S.App.D.C. 221, 222, 322 F.2d 434, 435 (1963), *cert. denied,* 375 U.S. 976, 84 S.Ct. 494, 11 L.Ed.2d 421 (1964). Assuredly this is such a case.

Had defense counsel been apprised of the requested reinstruction, undoubtedly he would have argued that the request be granted. However, even if the court had accepted counsel's argument and granted the request (which the court was free to reject), it is highly unlikely that the jury would have found self-defense on the basis of the evidence which had been presented to it. It is apparent that even if the jury had believed appellant's testimony, a jury finding of self-defense would not have been warranted.

Appellant's testimony was that he was afraid because he thought the victim had a gun in his pocket and that his life was in danger. It is unlikely that the jury disbelieved that he honestly entertained a fear of the victim. Every element substantiating that fear in the appellant's own testimony was corroborated by other witnesses, including the government's. Testimony other than appellant's tended to show that: (1) the victim was carrying a gun earlier on the day of the incident; (2) the victim had engaged in serious assaultive behavior previously; (3) the victim had been drinking and tended to be unruly when he did so; and (4) the victim had been vocally abusive toward appellant and his mother. Moreover, other witnesses corroborated both the fact that appellant had warned the victim not to reach for his pocket and the fact that immediately after he had struck the decedent, appellant stated that he thought his victim had a gun.

Thus, as we suggested in *Pendergrast* (332 A.2d at 926 n. 5), the jury's rejection of appellant's fully-aired claim of self-defense was unlikely to have been based on a failure to give credence to appellant's version of the events or of his own state of mind. Rather, the jury's decision far more plausibly was based on an assessment that appellant's apprehension of harm was objectively unreasonable or that he used more force than was necessary to protect himself. (The decedent apparently was unarmed.) Thus, even had the jury accepted appellant's testimony, it would not be reasonable

to assume that he would have been acquitted on the ground of self-defense. Any failure of the court with regard to another self-defense instruction therefore could not have been prejudicial.

The only other possibility of prejudice to appellant which conceivably could have resulted from the court's failure to apprise counsel of the request for reinstruction was noted in the original decision. We there stated in the subject footnote:

> Had the trial judge properly informed counsel of the jury's request for further instructions, counsel might well have raised again the necessity for a manslaughter instruction. Had such a charge ensued, the critical defect at trial would have been cured. [*Ibid.*]

Since the only prejudice which appellant could have suffered was the loss of a possible manslaughter instruction, which was exactly what we held to have been required in our earlier opinion, the entry on remand of a judgment of guilty of manslaughter in lieu of the murder conviction which we set aside removed any possible prejudice and thus obviated any need for a new trial on that ground.

The foregoing explains why in the original *Pendergrast* decision it was stated that "[c]onsidering all of the circumstances," appellant was not automatically entitled to a new trial. 332 A.2d at 927. We unanimously sanctioned the precise procedure which the trial court ultimately followed, as there existed no impediment to the entry of a manslaughter judgment. It was then, and remains now, my firm belief that none of the other alleged errors would have affected the validity of a manslaughter conviction, and obviously an appellate court is not obliged to discuss every issue raised by an appellant. Therefore, both the procedure employed and the result reached in the earlier *Pendergrast* opinion are well within the principles established in the *Austin* and *Wharton* line of cases. I find no error in the trial court's conclusion—unequivocally invited by this court—that no undue prejudice to appellant would result and that the interests of justice would best be served by

the entry of a judgment of guilty of manslaughter. Accordingly, I respectfully dissent.