Leon **MARCUS**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 83–318.

District of Columbia Court of Appeals.

Submitted April 11, 1984.

Decided May 17, 1984.

James Klein, Public Defender Service, Washington, D.C., and John P. Dwyer, Public Defender Service, Washington, D.C., were on the brief, for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Thomas J. Tourish, Jr., and Daniel S. Seikaly, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and MACK and PRYOR, Associate Judges.

PRYOR, Associate Judge:

Marcus was charged with second-degree burglary, D.C.Code § 22–1801(b) (1981); grand larceny, *id.* § 22–2205; and false pretenses, *id.* § 22–1301. A jury convicted him of the latter two offenses. Marcus' claims on appeal are that the trial judge improperly amended the indictment through instructions to the jury, and erroneously ruled as to the permissible scope of cross-examination of his proffered character witnesses. We affirm the convictions, finding no error.

I

Marcus was in the business of buying and selling office equipment—primarily but not exclusively relating to the printing trade. In October 1981, he telephoned a Maryland office machine store and announced that he had an electric typewriter for sale. The store owner expressed interest, and agreement was later reached on price. The store subsequently picked up Marcus' typewriter, and he was paid $325 by check.[1]

The store owner's later inspection of the typewriter, however, indicated that it might have been stolen. Specifically, a label on the back of the machine identified it as property of Catholic University, and the bottom casing of the machine was damaged as though it had been forcibly pulled from a locked position. The store owner called the F.B.I., and confirmed that in fact the machine had been stolen from the University several days earlier. Marcus was arrested.

II

Count three of the indictment alleged that

Between on or about October 9, 1981, and on or about October 10, 1981, within the District of Columbia, Leon Marcus, with intent to defraud, received property of Catholic University, of a value of $100 or more, consisting of a typewriter, which had been stolen, knowing *and* having cause to believe that it was stolen. (Receiving Stolen Property, in violation of 22 D.C.Code, Section 2205). [Emphasis added.]

In instructing the jury on the elements of the receiving stolen property offense, the trial judge, in accordance with the statute and Standardized Criminal Jury Instructions for the District of Columbia, No. 4.58(3) (3d ed. 1978), stated that

The essential elements of that offense, each of which the government must prove beyond a reasonable doubt, are as follows:

\* \* \* \* \* \*

Thirdly, that at the time [defendant] received or bought [the stolen goods] he knew *or* had cause to believe that the goods were stolen[.] [Emphasis added.]

Marcus claims that the disparity between the indictment's statement of the guilty knowledge element in the conjunctive, and the trial judge's instruction in the disjunc-

---

**1.** Pursuant to the sale, Marcus signed a receipt indicating that he was the rightful owner of the typewriter.

tive, worked an amendment of the indictment mandating reversal. This is not the law.

■■■■ The Indictment Clause of the Fifth Amendment provides that

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.

The Fifth Amendment applies directly to the District of Columbia. *Barry v. Hall,* 68 App.D.C. 350, 353, 98 F.2d 222, 225 (1938). The purpose of the Indictment Clause is to provide a neutral presence of "ordinary citizens" as a buffer between the state and the potentially accused. *Whalen v. United States,* 379 A.2d 1152, 1156 (D.C. 1977), *rev'd on other grounds,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 915 (1980).[2] It is in light of this purpose that amendments to the indictment, other than pursuant to resubmission to the grand jury, violate the Fifth Amendment and compel reversal of the conviction. *Id.; Ex Parte Bain, supra* note 2, 121 U.S. at 12–14, 7 S.Ct. at 787–788. Such unauthorized amendments are presumptively prejudicial; no "harmless error" standard can cure the proven defect in procedure.[3]

■■■■ Marcus' suggestion that an amendment occurred in his case ignores the established principle that when the statute sets forth various elements of the offense in the disjunctive, and the indictment nevertheless lists them conjunctively, it is not error for the trial court to instruct the jury that the government need only prove one of the disjunctive elements. *Whalen v. United States, supra,* 379 A.2d at 1157; *United States v. Miqueli,* 349 A.2d 472, 475 (D.C.1975); *United States v. Bettencourt,* 614 F.2d 214, 219 (9th Cir.1980); *United States v. Haymes,* 610 F.2d 309, 310–311 (5th Cir.1980); *United States v. Gunter,* 546 F.2d 861, 868–69 (10th Cir.1976), *cert. denied,* 431 U.S. 920, 97 S.Ct. 2189, 53 L.Ed.2d 232 (1977). The reason for this rule is that it is not improper for the jury to convict under the statute by finding a violation of one of the disjunctive terms, the other being deemed surplusage. *District of Columbia v. Hunt,* 82 U.S.App. D.C. 159, 163–64, 163 F.2d 833, 837–38 (1947).[4] Marcus has failed to demonstrate error.

### III

Marcus next suggests that there was reversible error in the trial judge's ruling pertaining to cross-examination of his proffered character witnesses. Prior to commencement of trial, Marcus indicated to the court that he would like to call two witnesses to testify regarding his good reputation for "truth and honesty" at the time the typewriter was stolen and sold. Marcus

---

**2.** The indictment itself serves to "apprise the accused of charges against him so that he may prepare his defense, and to describe the crime charged with specificity sufficient to enable the accused to protect against future jeopardy for the same offense." *Id.* In *Ex Parte Bain,* 121 U.S. 1, 12, 7 S.Ct. 781, 787, 30 L.Ed. 849 (1887), the Court, quoting Chief Justice Shaw, said:

"[I]t remains true that the grand jury is as valuable as ever in securing . . . 'individual citizens' from an open and public accusation of crime, and from the trouble, expense, and anxiety of a public trial before probable cause is established by the presentment and indictment of a grand jury;" and "in case of high offenses" it "is justly regarded as one of the securities to the innocent against hasty, malicious, and oppressive public prosecutions."

**3.** In contrast, the harmless error standard of *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct.

824, 828, 17 L.Ed.2d 705 (1967), does apply to alterations characterized as mere "variances." *See* Super.Ct.Crim.R. 52(a). A variance occurs when the language in the indictment is unchanged, but the evidence adduced at trial proves facts distinct from those alleged in the indictment. *See, e.g., United States v. Hansen,* 701 F.2d 1215, 1221 (7th Cir.1983).

**4.** The situation is different, of course, when the indictment alleges several acts, in the conjunctive, which constitute the offense charged. In such a case, an instruction which allows the jury to convict upon a finding that only one alleged act occurred is error. *Cf. Whalen v. United States, supra,* 379 A.2d at 1156–57 (court erroneously allowed government to amend indictment by deleting portion of unseverable charge).

did not deny that he had sold the typewriter—his defense was lack of knowledge that the machine was stolen property.[5]

Marcus sought a ruling from the court regarding the permissible scope of cross-examination of his witnesses by the government.[6] Specifically, he was concerned that the government might be permitted to ask his witnesses whether they had "heard" that, approximately two weeks *after* the Catholic University theft, Marcus was arrested in Maryland for allegedly selling stolen property to the same store which had purchased the typewriter in the instant case.

The trial court ruled that, should Marcus not testify on his own behalf, the government would not be permitted to question the character witnesses about the subsequent arrest. The court reasoned, however, that if Marcus did testify, his credibility as a witness would thereby be placed into issue and character witness testimony as to Marcus' traits of truth and honesty would inescapably be viewed by the jury as pertinent up until the time of the trial. In light of this, the court ruled that the subsequent arrest could be mentioned in cross-examining the character witnesses if Marcus testified.[7]

Marcus did testify on his own behalf but chose not to call any character witnesses. He contends now that the trial judge's ruling impermissibly forced him to choose between testifying and calling character witnesses. We hold that the court's ruling did not constitute an abuse of discretion.

■ It is the accused's prerogative to introduce evidence which sheds light on one or several of his character traits, in order to establish a reasonable doubt as to his guilt. *Michelson v. United States*, 335 U.S. 469, 476, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948). Proving character, according to the general rule, must be limited to establishing general reputation in the community for the asserted trait.[8] *United States v. Lewis*, 157 U.S.App.D.C. 43, 48, 482 F.2d 632, 637 (1973). So long as the traits are "germane to issues on trial," the accused has great latitude in choosing which or how many traits to bring into issue. *Darden v. United States*, 342 A.2d 24, 26 (D.C.1975).

■ The accused may call character witnesses on his behalf. Once the witness has testified on direct, however, his credibility and reliability may be tested on cross-examination, the same as any other witness. To this end, the witness may be asked whether he has "heard" that the accused had been arrested for, or convicted of, certain offenses. *United States v. Wooden*, 137 U.S.App.D.C. 1, 2, 420 F.2d 251, 252 (1969). The relevance of this questioning is that possession of such knowledge by the witness may cause the jury to doubt his estimation of the accused's good character, whereas the witness' admission that he had not "heard" of such arrests or convictions may undercut

---

5. Marcus, of course, also denied stealing the typewriter from Catholic University.

6. This was done in accordance with the preferred practice. *See Morris v. United States*, 469 A.2d 432, 436 (D.C.1983).

7. The court stated that

    If [Marcus takes] the stand then there's no way if character testimony is put on concerning truth and veracity—there is no way to bifurcate that and say: Ladies and gentlemen, to start with, the opinion of that person as to truth and veracity—you are only to consider it in terms of whether or not it is probable that the defendant committed this offense, and you are not to take [it] into consideration in

any regard in weighing his believability as a witness.
    *You can't do that.* I think that if he testifies, [and] if that is the character testimony, then the question does become a broader one under the law ....

8. *Compare* Fed.R.Evid. 405(a), not adopted by our local courts, which permits a character witness to present "testimony as to reputation or ... in the form of an opinion." *See generally* S. Saltzburg & K. Redden, Federal Rules of Evidence Manual 157–65 (3d ed. 1982). *See also Morris v. United States*, *supra* note 6, 469 A.2d at 438–39 (Newman, C.J., dissenting) (criticizing limiting witness to reputation testimony).

the probativeness of his testimony, being based upon incomplete information.

■■■ The allowance of such cross-examination is, obviously, "pregnant with possibilities of destructive prejudice." C. McCORMICK, EVIDENCE 457 (Cleary ed. 1972). Parading before the jury a list of arrests or convictions, in the guise of cross-examining a character witness, tends towards improperly proving that the accused is a generally "bad man," instead of guilty of the specific charged offense.[9] It is for this reason that the cross-examination, including mention of arrests and convictions, must be conducted in good faith, and confined to matters pertinent to the witness' direct testimony—i.e., the specific character trait asserted. United States v. Lewis, supra, 157 U.S.App. D.C. at 50, 482 F.2d at 639.

■■■■ If the character trait asserted is one other than truth and honesty, then, whether or not the accused testifies,[10] the general rule provides that the relevant inquiry of the character witness must concern the accused's reputation up until the time of the offense.[11] Awkward v. United States, 122 U.S.App.D.C. 165, 166 n. 1, 352 F.2d 641, 642 n. 1 (1965); Lomax v. United

States, 37 App.D.C. 414, 418 (1911); see Annot., 13 A.L.R. 4th 796, 816–17 (1982). In such a case, questioning the character witness about the accused's subsequent arrests or convictions is deemed irrelevant, or at least unduly prejudicial. However, there is a recognized exception to avoiding use of subsequent arrests or convictions to impeach character witnesses: when the trait in issue is truth and honesty, and when the accused testifies at trial.[12] See Greenfield v. State, 336 So.2d 1205, 1207 (Fla.App.1976) (citing United States v. Lewis, supra); Harwell v. State, 242 S.W.2d 388, 390, 156 Tex.Cr.R. 337, 340 (1951); State v. Carson, 239 S.W.2d 532, 536–38 (Mo.App.1951); accord United States v. Lewis, supra, 157 U.S.App.D.C. at 51 & n. 44, 482 F.2d at 640 & n. 44. We think that the trial judge did not abuse his discretion in invoking this exception to the general rule.

Assuming, therefore, that Marcus refrained from calling character witnesses solely because of the court's ruling, we find no reason to reverse.[13] Compare United States v. Lewis, supra, 157 U.S.App.D.C.

---

**9.** See United States v. Lewis, supra, 157 U.S.App. D.C. at 48, 482 F.2d at 637 ("Conviction of crime must rest upon proof beyond a reasonable doubt of the elements of a crime specifically charged, and evidence of a general predisposition toward crime is taboo.") (footnote omitted).

**10.** The accused, of course, may offer character evidence whether he chooses to testify or remain silent. Pendergrast v. United States, 332 A.2d 919, 921 n. 1 (D.C.1975) (quoting Shimon v. United States, 122 U.S.App.D.C. 152, 156, 352 F.2d 449, 453 (1965)), rev'd on remand on other grounds, 385 A.2d 173 (D.C.1978).

**11.** Reputation evidence substantially predating the occurrence of the charged offense may be excluded by the trial court as lacking in probative value. See State v. Sepe, 410 A.2d 127, 132 (R.I.1980).

**12.** We appreciate that an accused does not put his character into issue merely by taking the stand. Johns v. United States, 434 A.2d 463, 468 (D.C.1981), reh'g en banc denied, 449 A.2d 1074 (D.C.1982). The rationale behind the exception

to the general rule preventing impeachment use of subsequent arrests or convictions, however, seems to be an appreciation of the very practical fact that when the accused chooses to offer evidence of his truth and honesty, and to testify himself, the character evidence (even if qualified by a limiting instruction) will very likely be used by the jury in evaluating the accused's credibility as a witness. In short, the credibility as a witness issue will almost inevitably tend to be considered with the issue of reputation for truth and honesty at the time of the offense. This problem should not occur, we note, when the character trait established is clearly distinct from credibility—such as reputation for peace and good order.

**13.** If it assumed arguendo that the trial court's ruling had been erroneous, the government could have argued that Marcus chose to not call character witnesses because of unrelated concerns and that, therefore, the evidentiary ruling was harmless under Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). See Johns v. United States, supra note 12, 434 A.2d at 475–76 (Pryor, J., dissenting).

at 47–48, 482 F.2d at 636–37. The convictions must be and hereby are

*Affirmed.*