# Albertson et al. v. Commonwealth.

January 24, 1950

R. C. Tarter, Judge.

L. C. Lawrence, for appellants.

A. E. Funk, Attorney General, Squire N. Williams, Jr., Assistant Attorney General, for appellee.

Van Sant, Commissioner—Reversing.

On the first trial both appellants were found guilty of murder and sentenced to confinement in the State Reformatory for life. That judgment was reversed in Albertson et al. v. Commonwealth, 308 Ky. 294, 214 S. W. 2d 394. On the second trial, appellants were found guilty of manslaughter and sentenced to confinement in the State Reformatory for a period of ten years.

We are asked to reverse the judgment on the following grounds: (1) the Trial Court erred in overruling appellants' motions that he vacate the bench; (2) the jury was influenced to the prejudice of appellants by alleged acts of the sons and grandsons of the victim of the shooting while the jury was deliberating on its verdict; (3) the court abused its discretion in summoning a jury from Wayne County; (4) the court erred in overruling the motion of appellant Fowler to peremptorily instruct the jury to find him not guilty; (5) the court erred in permitting the attorney for the Commonwealth to cross-examine character witnesses in an incompetent manner; (6) the court erred in rejecting competent evidence offered for appellants; (7) the court erred in ad-

mitting incompetent evidence for the Commonwealth; and (8) the court failed to instruct the jury on the whole law of the case.

The evidence on the second trial was substantially the same as that introduced on the first, and will not be repeated because it was stated in the opinion cited above. We will proceed directly to the points raised for reversal of the second judgment.

Affidavits of both appellants, filed in support of their motions for the regular judge to vacate the bench, recited that they had been extremely active in opposing the judge in his race for the nomination for his present office, approximately seventeen months previous to the day of the trial. That the campaign at that time was waged with great bitterness on both sides. The affiants concluded that the presiding judge was embittered with "great political hatred and bias" against them, and such bitterness was demonstrated at the conclusion of the first trial by the fact that, in the absence of their attorneys, the judge sentenced them to life imprisonment on the morning of the day he had set for hearing the motion for a new trial, and before the hour at which the hearing was to be conducted. They further stated that the person for whose murder they were charged was a close personal and political friend of the trial judge and waged an open fight in his behalf in the Primary Election hereinbefore referred to, and that relationship was disclosed by a letter filed with the affidavit signed by the judge and addressed to the deceased at his residence. The letter reads:

"R. C. Tarter
Pulaski County Judge
Somerset, Kentucky
8-7-47

"Mr. Neat Denny
Watauga, Kentucky

"Dear Squire :- I want to thank you for your loyal support in the recent Primary election. With the aid of good friends like you we put over a big victory. In fact, our victory was the most sweeping success of my life. The last time I was in your community you were

away and I failed to get to see you. I hope to return some time and visit you when you are at home.

"I look forward to many happy contacts with you during the *four* term of office. I shall never forget your loyalty and devotion to my interests in this campaign. Give my regards to my old friend John Upchurch and Ed Pierce. I hope to be in Albany soon and will see you.

"With kind personal regards, I remain, your friend

"/s/ R. C. Tarter"

As was pointed out in Nelson v. Commonwealth, 202 Ky. 1, 258 S. W. 674, a motion for the trial judge to vacate the bench in a given case must be determined upon the statements made in the affidavit, without any inquiry being made into the truth or falsity of the statements. This rule not only disarms the trial judge in respect to his own knowledge of the matter contained in the affidavit, but it clothes the defendant with unusual authority. It is only proper, therefore, that the showing made in the affidavit must clearly establish the fact that the mind of the presiding judge is so poisoned against the defendant as to prevent the latter from obtaining a fair trial at the hands of the judge. Few elections are held in which candidates and their respective organizations do not wage bitter battles, but it is remarkable how quickly such bitterness disappears, with the result that bitter opponents become ardent supporters of the successful candidates in the November election. We think that the manner in which appellants were sentenced on the first trial was not demonstrative of prejudice against them on the part of Judge Tarter, for all the affidavits disclose appellants or their counsel may have informed the judge that they did not care to be heard on the motion for a new trial, although previously having requested it. If a trial judge could not sit in cases in which persons who voted against him were litigants, he would be disqualified, presumably, in about fifty per centum of the cases; and if his opponents in the Primary be added to those opposing him in the final election, he would be disqualified in more than half the cases. The text of the letter filed with the affidavits did not depart from the usual courteous thanks extended by successful candidates to their supporters. We are of the opinion that the affida-

vits filed in support of the motion did not state facts sufficient to clearly show appellants could not receive a fair trial with the regular judge presiding.

The acts complained of in the second ground urged for reversal likely will not occur on another trial; and, since the judgment must be reversed for other reasons, we will reserve a decision in respect to this question.

The basis for ground three is that the jury which found appellants guilty and fixed their punishment at life imprisonment on the first trial was summoned from Wayne County; the second jury likewise was summoned from that county; and only ten of the seventy men summoned qualified for jury service. Appellants' argue "how can it be thought that all not qualifying did not disqualify themselves, and, most logically, because they were acquainted with the facts of the case and had already formed opinions as to how it should be decided." The answer to this argument is that such may have been the case; but, the cause of disqualification of rejected jurors can have no effect on the question of the qualification of those finally selected for jury service. The mere fact that one man or sixty, as the case may be, from a single county has, or have, a preconceived notion in respect to the guilt or innocence of the accused does not, by any process of logical reasoning, lead to the conclusion that every person in the county is disqualified for the same or other reasons.

The opinion reversing the judgment entered at the conclusion of the first trial is the law of the case; and, since the evidence was the same on the second trial, the decision on the first appeal that the court should have instructed the jury to find defendant Fowler guilty "only in the event they found he had aided and abetted either Albertson or Coop in the killing of Neat Denny," disposes the contention that Fowler was entitled to a peremptory instruction on the second trial. Finley et al. v. Thomas, 280 Ky. 654, 134 S. W. 2d 243.

Appellants introduced several witnesses who testified that the reputation of appellants for peace and quiet at the time of the affray was good. In cross-examining these witnesses, the attorney for the Commonwealth persisted, with consent of the court, in questioning them concerning the reputation of appellant Fowler

for having engaged in the illicit traffic of intoxicating liquors. This clearly was erroneous and requires reversal of the judgment in the Fowler case, at least. The cross-examination of the witnesses testifying as to the good reputation of Albertson for peace and quiet was relevant and competent. This questioning was an endeavor to obtain from the witnesses the names of persons who had expressed opinions that his reputation for peace and quiet was good, thus affording the Commonwealth an opportunity to investigate the verity of the basis of the witnesses' impressions.

Contrary to appellants' contention, the court properly rejected the evidence they offered in respect to the truthfulness of a statement contained in an affidavit sworn to by Fowler to obtain the search warrant referred to in the opinion on the first appeal. The truthfulness of that statement was not attacked by the Commonwealth, and the statement had no bearing whatever on the guilt or innocence of the accused or the motive to be established; therefore, it did not present an issue upon which evidence could be introduced. But we are of the opinion that the court erred to the prejudice of appellants in rejecting the testimony of Judge R. S. Edwards concerning the penetrating power of missiles from various weapons used in the encounter when received in certain parts of the body. This evidence was of the same general character which we declared on the first appeal to have been competent when testified to by a doctor. Judge Edwards qualified as an expert on the subject; and, if it had been admitted, the evidence would have corroborated the testimony of appellants as to how the shooting occurred. For this reason the judgments as to both appellants must be reversed.

The seventh ground was discussed and decided adversely to appellants' contention in the opinion on the first appeal and is the law of the case on this appeal. The alleged error of the court in admitting the clothing of the victim of the homicide in evidence could have been, but was not, raised on the first appeal. On this account, it cannot be considered as a ground for reversal of the judgment entered on the second trial. Catlin v. Justice, 288 Ky. 270, 156 S. W. 2d 107.

The instruction in respect to self defense was the same on this trial as that given on the first trial and

concerning which no objection was made on the first appeal. It, therefore, cannot be considered under the rule of the law of the case. Lexington Railway Company v. Fain, 90 S. W. 574, 28 Ky. Law Rep. 743.

For the reasons assigned, the judgment as to both appellants is reversed, with directions that it be set aside and appellants be granted a new trial to be conducted in a manner not inconsistent with this opinion.