460 A.2d 791

COMMONWEALTH of Pennsylvania

v.

Henry HAYES, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 29, 1982.

Filed April 29, 1983.

Petition for Allowance of Appeal Denied Oct. 13, 1983.

Kalvin Kahn, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, WICKERSHAM and CIRILLO, JJ.

CIRILLO, Judge:

This is an appeal from the judgment of sentence imposed on the appellant, Henry Hayes, on June 10, 1981, in the Court of Common Pleas of Philadelphia County. A jury

convicted appellant of burglary,[1] and the court, after denying appellant's post-trial motions, sentenced him to three to twelve years imprisonment. We affirm.

On October 29, 1980, at approximately 6:20 a.m., the doorbell rang at 1910 Harlan Street in Philadelphia, the home of 80 year old Addie Brooks. When Ms. Brooks answered the door, the man at the door told her he had come to read the meter in the basement. Ms. Brooks commented that it was "mighty early," but the man responded "we are coming early now." Ms. Brooks let him in to read the meter. He went down to the basement, then came back up and asked if he could see Kenny Myers, Ms. Brooks's tenant at the time. Ms. Brooks replied, "No, Kenny is not up," but the man went up to the second floor. While he was upstairs, Ms. Brooks called the police on the downstairs phone. The man then returned to the first floor carrying a bucket of pennies, and asked Ms. Brooks where her money was. He stayed a few minutes longer, then exited.

In the meantime, Officers Edward Sawicki and Thomas Newbert had received a radio call to proceed to 1910 Harlan Street. Within thirty seconds of the call, they arrived on the scene. Officer Sawicki spotted the appellant on the doorstep in front of 1910 Harlan, whereupon the appellant ran across the street into a blind alley. Officer Newbert, along with Officer Michael Janda, who had also responded to the call, gave chase on foot. During the chase, appellant dropped the bucket taken from Ms. Brooks's residence. Moments later, the officers apprehended him. Officer Newbert had never lost sight of the appellant from the time he started to run from the doorstep.

Officer Sawicki, seeing that his colleagues had captured the appellant, returned to 1910 Harlan Street, where Ms. Brooks told him she had been robbed. Officers Newbert and Janda brought the appellant before Ms. Brooks, who identified him as the intruder. Less than one minute had elapsed from the time the police first arrived on the scene.

1. 18 Pa.C.S. § 3502.

Officer Newbert examined Ms. Brooks's second floor bedroom and observed that the closet and drawers had been rummaged through.

At trial, appellant denied this version of the facts. He also testified that he was a long-time drug user; that, after buying drugs on the morning in question, he was going to visit a friend with whom he would every now and then "take off on drugs"; that he was stepping into the yard of his friend's residence at 1911 Harlan Street, across the street from 1910 Harlan, when police arrested him; and that he told the arresting officer that he (appellant) was "getting ready to take off on drugs."

■ Appellant's first assignment of error is that the court refused to pose appellant's requested voir dire question whether prospective jurors could participate as fair and impartial jurors upon hearing that the defendant in the case was a drug user. The same issue was treated in *Commonwealth v. Werts*, 483 Pa. 222, 224–25, 395 A.2d 1316, 1317 (1978), in which the Supreme Court said:

Appellant's first contention is that the trial court erred in not allowing defense counsel to ask the following questions during the voir dire of prospective jurors:

If you were to hear evidence about a person having used drugs, would you be more inclined to give his testimony less weight than any other witness that you did hear?

If you were to hear testimony concerning drug addiction or use of drugs, do you think, deep down inside of you, you would be inclined to reject any evidence offered by parties indicating that they have used drugs?

This Court has held that "the examination of jurors under voir dire is solely for the purpose of securing a competent, fair, impartial and unprejudiced jury.... Neither counsel for the defendant nor the Commonwealth should be permitted to ... ask direct or hypothetical questions designed to disclose what a juror's present impression or opinion may be or what his attitude or decision will likely be under certain facts which may be

developed in the trial of the case." *Commonwealth v. Johnson,* 452 Pa. 130, 134, 305 A.2d 5, 7 (1973). "A trial court's refusal to permit certain hypothetical questions on voir dire will not be disturbed absent a palpable abuse of discretion." *Commonwealth v. England,* 474 Pa. 1, 8, 375 A.2d 1292, 1295 (1977).

At the beginning of voir dire, defense counsel stated during a sidebar conference that he wanted to ascertain whether the prospective jurors had "any prejudice or bias that would gravitate against the interest of my client if there is any evidence presented by us to show that my client, perhaps, was using drugs at the time he was arrested, and this may have some effect upon whether he intelligently waived his right to counsel". The trial court did not abuse its discretion in not permitting the afore-mentioned line of inquiry because defense counsel was improperly trying to determine what the prospective juror's reaction might be *when* and *if* defense counsel presented evidence that appellant was under the influence of narcotics when he waived his *Miranda* rights.

We fail to see any relevant distinction between the purpose of the proposed voir dire questions in *Werts* and the purpose of the proposed voir dire question in this case. In both cases, the questions were "designed to disclose what a juror's present impression or opinion may be or what his attitude or decision will likely be under certain facts which may be developed in the trial of the case." Therefore, we hold that the trial court did not abuse its discretion in refusing to ask appellant's proposed voir dire question, and there was no error.

Appellant next assigns four errors in the trial court's jury charge. First, appellant contends that the court charged improperly on the issue of inconsistent witness identifica-tion statements. At trial, Ms. Brooks testified positively under both direct and cross-examination that appellant was the man who had entered her home. However, defense counsel brought out on cross-examination that at the pre-liminary and suppression hearings, Ms. Brooks had also

said, "I think he is the one," and, "Looks like that's the man." Based on this prior testimony, defense counsel requested the following jury charge:

According to the evidence, Mrs. Brooks gave testimony on another occasion which appears to conflict with the— contradict part of the testimony given at this trial.

You may accept her other testimony as being true, you may accept her testimony as replacing the testimony which she gave in this trial.

The court's charge was as follows:

Now, there was argument, you will recall, and discussion by both Mr. Barbieri and Mr. DeMarco as to whether Mrs. Brooks made an inconsistent statement, and in particular the inconsistent statement they were talking about, whether at a prior hearing she had indicated some reservation or hesitancy about whether, "This is the man," as distinguished from "I think this is the man," and you heard their arguments from both of them as to whether this did show hesitancy or didn't show hesitancy; whether that is an inconsistent statement what she said here, or whether it was not.

Very often the Judge can say, "In my opinion, it is this, that or the other thing," but that is not my job.

You are going to have to decide whether this witness made an inconsistent statement, or one that appears to contradict on what she said earlier, and if you decide that there was such an inconsistent statement, you may, if you wish, accept the other testimony, that is, the testimony given at the earlier time as replacing the testimony which she gave in the trial.

As I say, again, this is a matter for you to balance, to weigh it.

You may accept it as testimony in place of what Mrs. Brooks said here, but it is the judgment call for you to make.

■ The trial court is not required to accept the language of the point submitted by counsel, but rather is free to select its own form of expression. The only issue is

whether the area is accurately and clearly presented to the jury for consideration. *Commonwealth v. McComb,* 462 Pa. 504, 341 A.2d 496 (1975); *Commonwealth v. Boone,* 287 Pa.Super. 1, 429 A.2d 689 (1981). In the instant case, the court's charge differs from the requested charge only in that the former more explicitly leaves to the jury the determination whether Ms. Brooks's prior statements were inconsistent with her testimony at trial. The judge's charge on this point was entirely proper, and accordingly we find no error.

▄▄▄ Appellant's second objection to the court's jury charge concerns the law applicable to the identification procedure used by the police at the scene of the crime. Appellant requested that the court charge the jury that the police could have conducted a lineup at the scene of the crime. The court's actual charge was that the law did not require a lineup, and that the police acted lawfully in conducting a one-on-one showup between Ms. Brooks and the defendant. Absent some special element of unfairness, a prompt on-the-scene confrontation is a permissible means of having a criminal suspect identified. *Commonwealth v. Turner,* 254 Pa. 520, 314 A.2d 496 (1974); *Commonwealth v. Johnson,* 291 Pa.Super. 566, 436 A.2d 645 (1981); *Commonwealth v. Rose,* 265 Pa.Super. 159, 401 A.2d 1148 (1979). Additionally, criminal defendants in Pennsylvania have no constitutional right to a pretrial lineup. *Commonwealth v. Sexton,* 485 Pa. 17, 400 A.2d 1289 (1979); *Commonwealth v. Evans,* 460 Pa. 313, 333 A.2d 743 (1975); *Rose, supra; Commonwealth v. Frank,* 263 Pa.Super. 452, 398 A.2d 663 (1979). Appellant has not alleged that the particular circumstances of this case rendered the showup with Ms. Brooks unfair. Instead, he contends only that the court should have gone on to instruct that police *could have* conducted a line up. However, the court had no duty to charge the jury on law not applicable to the case. *Commonwealth v. Parks,* 281 Pa.Super. 38, 421 A.2d 1135 (1980). Where the charge given properly covers the requested point, it is not error for the trial judge to refuse to

give additional instructions. *Commonwealth v. Hawkins*, 295 Pa.Super. 429, 441 A.2d 1308 (1982); *Commonwealth v. Gardner*, 246 Pa.Super. 582, 371 A.2d 986 (1977). Since the court properly charged the jury that the showup was permissible and that a lineup was not required, the court did not err in refusing to give the additional instruction requested by appellant.

■ Appellant next objects to that portion of the charge in which the court told the jury that they could consider Hayes's testimony that he was a drug user as part of the "whole picture" in assessing his credibility. In *Commonwealth v. Whack*, 482 Pa. 137, 141 n. 2, 393 A.2d 417, 419 n. 2 (1978), the Supreme Court stated:

> Appellant also argues that the fact that Newell was an admitted marijuana user, and that his testimony was based upon an observation in a crowded bar approximately 30 feet from where the deceased was standing, his testimony should be rejected. [Sic] *These were considerations properly left to the trier of fact.* (Emphasis added).

And in *Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980), the Supreme Court held that the fact a witness used drugs was a matter of credibility properly left to the jury's consideration.[2] Appellant, in an attempt to account for his presence near the scene of the crime, testified of his own volition that he was a drug user. The only issue with respect to this testimony was whether the jury would believe it. The trial judge did not err when he permitted

**2.** The dissent suggests that *Hudson* and *Whack* are inapposite because the witnesses' drug use in those cases may have directly impaired their powers of observation on the specific occasions about which they testified. This may have been the case in *Whack*, although the language of the opinion itself does not indicate that it was. However, in *Hudson* this plainly was not the case. The witness who was a drug user in *Hudson* testified to two occasions on which the defendant had made inculpatory statements. It is not suggested that the witness was actually under the influence of drugs on either occasion. The dissent misreads *Hudson*, for the holding at issue pertained to a witness named Hassett, who was an "admitted drug addict," not to the witness named Johnston, who purportedly had been "drinking beer and smoking marijuana" on occasions when he heard inculpatory statements.

the jury to consider Hayes's purported drug use, upon which his alibi defense depended, as a factor bearing on the believability of the alibi. Although the judge might have framed the charge in terms less objectionable to the dissent, he did leave it open to the jury to decide whether they wished to attach any importance to the testimony of drug use, and he did properly give the instruction requested by defense counsel that evidence of drug use could not be considered as evidence of guilt in the case. Because reversible error cannot be predicated on isolated excerpts of the charge, we must review the entire trial court instruction on the issue of appellant's drug use. *Commonwealth v. Irwin*, 494 Pa. 277, 431 A.2d 257 (1981). Having done so, we conclude that the charge as a whole comports with Supreme Court holdings, and consequently the court did not err.

Appellant's fourth objection to the court's charge concerns the "entry" element of burglary. The court instructed the jury that the permission given by Ms. Brooks to enter the house could be viewed as "non-permission" either because appellant had misled Ms. Brooks into believing he was employed as a meter reader, which he was not, or because permission was given only to read the meter in the basement, and not to go up to the second floor. Appellant argues that he had permission to enter Ms. Brooks's house, and that, once inside, his going from the basement to the second floor of the house did not constitute a separate entry for purposes of the burglary statute.

The Crimes Code, at 18 Pa.C.S. § 3502(a), defines burglary:

A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

"Under this section, a person who is licensed or privileged to enter the premises is not a burglar even though he intends to commit a crime therein." *Commonwealth v. Corbin*, 300 Pa.Super. 218, 220, 446 A.2d 308, 309 (1982).

Furthermore, it is the Commonwealth's burden to prove beyond a reasonable doubt that the defendant was not licensed or privileged to enter the building. *Id.*

The issue in this case is whether Ms. Brooks' consent to let appellant in gave him license or privilege to enter, so that the Commonwealth failed to carry its burden of proving unlicensed and unprivileged entry.[3] We hold that the fact that appellant deceived Ms. Brooks as to his purpose for wanting in vitiated any consent she may have given him to enter, and that he was therefore neither licensed nor privileged to enter.

We have found no recent Pennsylvania case in which a burglar induced consent to enter through deception. However, the situation has been addressed in *Commonwealth v. Starkes*, 268 Pa.Super. 108, 114, 407 A.2d 853, 856 (1979), where we said: "We agree with the lower court that the element of license and privilege, in the particular context of the instant case, is quite similar to defense of consent. We further agree that, like consent, license and privilege can be vitiated if they are 'induced by force, duress, or deception.' 18 Pa.C.S.A. § 311(c)(4)." (Footnote omitted). In *Starkes*, the defendants had been let in voluntarily by the victim, who testified that she had done so because she recognized one of them and because it was cold outside. A three-judge panel of this Court, with Judge Hester dissenting, held that there was no deception sufficient to vitiate license or privilege to enter. However, the Court distinguished two cases from other jurisdictions where burglars *had* deceived their victims to gain entry.

In *United States v. Kearney*, 498 F.2d 61 (D.C.Cir.1974), the defendant had gained entry to a building where a card game was going on by dressing like a woman and pretending to be waiting for the arrival of a friend who was to join the game. The court stated that this subterfuge vitiated

---

**3.** Appellant's main contention on this appeal is that his going from the basement to the second floor of Ms. Brooks' home did not constitute a burglarious entry as defined in the statute. In light of our determination that appellant was not licensed or privileged to enter in the first place, we need not deal separately with this contention.

any consent the defendant had to enter, but in dicta; under the District of Columbia statute, consent to enter was not a defense to burglary, as long as the intent to commit a crime was proven.

In *People v. Segal*, 78 Misc.2d 944, 358 N.Y.S.2d 866 (Cr.Ct.N.Y.1974), two young men had gained entry to the CBS newsroom under the pretense that they were journalism students wanting to witness a live news broadcast. After disrupting the live broadcast by holding up a placard saying "Gays Protest CBS prejudice" in front of a camera trained on Walter Cronkite, the two were convicted of unlawful entry. The appeal court had to determine whether the original permission given the defendants to enter and remain on CBS property had conferred license or privilege on them, so that they could not be found guilty of entering or remaining unlawfully on the premises. In upholding the convictions, the court quoted the following proposition from the Practice Commentary of McKinney's Penal Law, page 341: "Of course, a person who gains admittance to premises through intimidation or by deception, trick or artifice, does not enter with 'license or privilege.'" 78 Misc.2d at 948, 358 N.Y.S.2d at 870.[4]

The same result has been reached under burglary statutes requiring a "breaking and entering." "The requirement of a breaking may be satisfied by what is termed a constructive breaking when an entry without actual breaking is obtained by means of fraud, threats, or conspiracy. Accordingly, when entry has been effected under the pretense of having business with the occupant or of paying a social visit, the defendant is deemed to have committed a breaking." (Footnotes omitted). R. Anderson, 2 Wharton's Criminal Law and Procedure § 415 (1957). Among cases cited as authority for this passage are *Johnston v. Commonwealth*, 85 Pa. 54 (1877), and *Rolland v. Commonwealth*, 82 Pa. 306 (1876). These were connected cases in

---

**4.** The court also held that, even assuming that the defendants were licensed to remain where they were watching the broadcast, their subsequent intrusion onto the set constituted criminal trespass.

which the defendants had been charged with burglary by breaking and entering. The defendants had called on the cashier of a banking house after hours, under the pretense of having business to discuss with him. After being admitted into the cashier's office and talking with him for half an hour, the defendants violently assaulted the cashier with the purpose of silencing him so that they could rob the bank. The Supreme Court in both cases held that this entry gained by deception was a constructive breaking sufficient to satisfy the "breaking" requirement for burglary.

Although our burglary statute no longer requires a "breaking and entering," the rationale of these old cases is equally applicable to the requirement of our new statute that an entry be unlicensed and unprivileged. The same question that is now before us was before the District Court of Appeal of Florida in *Howard v. State*, 400 So.2d 1329 (Fla.Dist.Ct.App.1981), in which the defendant had gained entry to the victim's home by telling her his van had broken down and he needed to use her telephone. The court stated:

> Entering a structure with consent is normally a defense to a burglary charge. § 810.02, Fla.Stat. (1979); *McEver v. State*, 352 So.2d 1213 (Fla. 2d DCA 1977), *cert. denied*, 364 So.2d 888 (Fla.1978). However, it is clear that entrance gained by trick or fraud will support a conviction for burglary. *Pedone v. State*, 341 So.2d 532 (Fla. 3d DCA 1977), *cert. denied*, 355 So.2d 516 (Fla.1978); 13 Am.Jur.2d *Burglary* § 13. This is because consent to enter obtained in such a manner is actually no consent at all and, therefore, the entrance is unauthorized. *State v. Ortiz*, 92 N.M. 166, 584 P.2d 1306 (1978).

> We hold that the misrepresentations made by the defendant in this case rise to the level of trick or fraud and nullify the consent to enter obtained from his victim.

We adopt this rationale in holding that appellant's posing as a meter reader vitiated any consent he had to enter Ms. Brooks's home, and that he was therefore unlicensed and unprivileged to enter as required by the burglary statute.

Consequently, there was no prejudicial error in the court's jury charge.

Appellant's final contention is that the verdict was against the weight of the evidence in that Ms. Brooks's identification of appellant at the preliminary and suppression hearings was doubtful.[5]

> The decision to grant or deny a motion for a new trial on the ground that the verdict is against the weight of the evidence is committed to the sound discretion of the trial court. Absent an abuse of discretion its denial of such a motion will not be disturbed. *Commonwealth v. Zapata*, 447 Pa. 322, 290 A.2d 114 (1972).

*Commonwealth v. Pronkoskie*, 498 Pa. 245, 251, 445 A.2d 1203, 1206 (1982). The credibility of witnesses is a matter to be determined by the trier of fact. *Commonwealth v. Upsher*, 497 Pa. 621, 444 A.2d 90 (1982); *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976); *Commonwealth v. Smith*, 274 Pa.Super. 280, 418 A.2d 406 (1980). The jury in this case had an ample opportunity to see Ms. Brooks under direct questioning and heavy cross-examination which brought out her doubtful identification of appellant at the prior hearings. The jury chose to believe Ms. Brooks's identification of appellant as the intruder in her home. Under the circumstances, the trial judge cannot be held to have abused his discretion in not granting a new trial based on Ms. Brooks's prior inconsistencies.

For these reasons, the judgment of sentence is affirmed.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

The judgment of sentence should be reversed and the case remanded for new trial. The trial judge instructed the jury as follows:

**5.** Appellant also challenges the verdict "for other stated reasons," but since no other reasons are stated in his brief, we take this as a reference to appellant's other arguments, which we have already rejected.

In speaking about the testimony of the defendant, I want to bring your attention to a specific point.

You will recall that Mr. Hayes testified that he had been a user of narcotics.

In weighing the testimony of any person, as I said, you may, of course, consider all of the factors, the whole case, in deciding whether you want to believe or disbelieve a person.

If you wish, you may consider that factor, if you believe it is appropriate.

However, the fact that Mr. Hayes indicated that he was a user of narcotics may not be considered as evidence of his guilt in this case.

In other words, the fact that a person is a drug user does not prove that he committed another burglary or another robbery.

As I say, it is a fact you can consider, just the whole picture, in deciding how much you want to believe a person, but the use of narcotics is not evidence of guilt in this case.

N.T. 30.

The prosecutor could not have made this statement, as part of his closing argument. Therefore, neither should the trial judge have made the statement.

–1–

The general rule is that evidence of prior criminal conduct is inadmissible to impeach a defendant who testifies in his own defense. *See McCormick on Evidence* § 191 (2d ed. 1972). There are two exceptions to the rule. First, evidence that the defendant has been convicted of *crimen falsi, i.e.,* an offense that indicates a propensity for dishonesty, is admissible to impeach the defendant, if he testifies in his own defense. *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973). Second, if the defendant places his character in issue by presenting evidence that a particu-

lar aspect of his character is good, evidence of prior criminal activity that serves to rebut *that particular aspect of his character* is admissible. *Commonwealth v. Moore*, 246 Pa.Super. 163, 369 A.2d 862 (1977); 42 Pa.C.S.A. § 5918(1) (1982). *And see State v. Turcio*, 178 Conn. 116, 422 A.2d 749 (1979) (Where character witness testifies to accused's nonviolent disposition, prosecution may inquire whether witness has heard of accused's involvement in violent incidents). *Cf. United States v. Wooden*, 420 F.2d 251 (D.C. Cir.1969) (Where traits in issue are honesty, peacefulness, and quietness, cross-examination as to inebriation improper); *Albertson v. Commonwealth*, 312 Ky. 68, 226 S.W.2d 523 (1950) (Where traits in issue are peacefulness and quietness, cross-examination as to illegal liquor sales improper); *Kennedy v. State*, 150 Tex.Cr.R. 215, 200 S.W.2d 400 (1947) (Where traits in issue are peacefulness, quietness, law-abidingness, and truthfulness, cross-examination as to illicit sexual relations improper). *See generally McCormick on Evidence* § 191 at 456 n. 73 (2d ed. 1972) ("[T]he inquiry must relate to crimes or misconduct relevant to the trait vouched for").

Here, appellant testified in his own defense. However, that didn't make the *crimen falsi* exception to the general rule available, for drug offenses are not *crimen falsi*. *Commonwealth v. Candia*, 286 Pa.Super. 282, 428 A.2d 993 (1981). The question we must decide, therefore, is whether the character-in-issue exception to the general rule is available.

It is clear that the character-in-issue exception is not available. It would make no sense to say that by testifying to prior drug use, appellant offered "evidence tending to prove his own *good* character." 42 Pa.C.S.A. § 5918 (1982) (emphasis added). The decision in *Commonwealth v. Craft*, 455 Pa. 616, 317 A.2d 213 (1974), is instructive. There the defendant testified that he had pleaded guilty to larceny and receiving stolen goods. The trial judge then

admitted evidence of other convictions. The dissenting Justices, ROBERTS and NIX, JJ. would have held this error, but the majority believed that in the circumstances, the defendant's testimony amounted to a claim of good character. Here, if appellant had testified, for example, that he had engaged in the use of drugs, but as a result of entering a therapy program, had cured his addiction, then I should agree that his testimony could be regarded as amounting to a claim of good character. Under *Craft*, evidence of prior criminal activity might then be admissible. But appellant gave no such testimony.

Even if appellant had given such testimony, or by other similar testimony had claimed good character, the prosecutor could not have argued that he should therefore be disbelieved. For as already discussed, when a defendant puts his character in issue, evidence of prior criminal activity is limited to evidence of activity that rebuts the particular aspect of the defendant's character that has been put in issue. *See Commonwealth v. Moore* and other authorities cited *supra*. And evidence of prior drug use does *not* put in issue the witness's character for truthfulness. Thus, in *Commonwealth v. Duffy*, 238 Pa.Super. 161, 174, 353 A.2d 50, 57 (1975), we rejected the defendant's argument that he should have been permitted to impeach a Commonwealth witness by showing that the witness was a drug user:

Appellant first contends that the testimony of Joseph Bozzell, John Foley, and Bridget Duffy was improperly limited with respect to Beachem's use of drugs. However, the questions that the trial court prohibited were questions regarding Beachem's use of drugs in general; they were not related to any event as to which Beachem testified. Such questions were properly excluded. *Commonwealth v. Dreibelbis, supra* [217 Pa.Super. 257, 269 A.2d 387 (1970)].

The conclusion is therefore inescapable that the prosecutor could not have made the statement, as part of his

closing argument, that the evidence of appellant's prior drug use impeached appellant's credibility, and that because of that evidence, appellant could be disbelieved.

The majority's reliance on *Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980), and *Commonwealth v. Whack*, 482 Pa. 137, 393 A.2d 417 (1978), is misplaced. These cases stand for two distinct propositions, neither of which is pertinent here.

The first proposition for which *Hudson* and *Whack* stand is that the jury may consider whether a witness's admitted, or proved, use of drugs at the time of the incident in question impaired the witness's ability to observe the incident. Thus in *Hudson* the defendant argued that "[the Commonwealth's witness] Johnston's physical condition after consuming drugs" made his testimony " 'patently unreliable.' " 489 Pa. at 628, 414 A.2d at 1385 (quoting *Commonwealth v. Whack*, 482 Pa. at 140, 393 A.2d at 419). Similarly, in *Whack* the defendant argued that the Commonwealth's witness Newell's testimony was incredible and "should be rejected" because he "was an admitted marijuana user, and ... his testimony was based upon an observation in a crowded bar approximately 30 feet from where the deceased was standing ...." 482 Pa. at 141 n. 2, 393 A.2d at 419 n. 2. Of course this is good law, but it has no pertinence here, for no one argues that appellant's ability to observe had been impaired by the use of drugs.

The second proposition for which *Hudson* and *Whack* stand is that evidence of drug use is not a sufficient basis for *disregarding* a witness's testimony. Thus in *Hudson* the defendant argued that "[t]he testimony of [the Commonwealth's witness] Hassett" was " 'patently unreliable' " because, among other reasons, Hassett was "an admitted drug addict" and had a prior criminal record. 489 Pa. at 629, 414 A.2d at 1386 (quoting *Commonwealth v. Whack*, 482 Pa. at 140, 393 A.2d at 419). The Supreme Court held that these were "matters of credibility properly left to the

jury's consideration." *Id.* Of course this too is good law, but neither is it pertinent here. Appellant does not argue that any witness's testimony should be disregarded on the basis of evidence of prior drug use by the witness. Moreover, both *Hudson* and *Whack* are consistent with *Commonwealth v. Duffy, supra*: if evidence of drug use is inadmissible to *rebut* evidence of veracity, as *Duffy* holds is the law, then such evidence cannot serve as a basis for *disregarding* a witness's testimony.

–2–

I should think it self-evident that a trial judge may not do what a prosecutor may not do: the judge may not "outprosecute" the prosecutor. Here, not only did the judge tell the jury that it could disbelieve appellant because of appellant's prior drug use—something the prosecutor couldn't have done—but he emphasized appellant's prior drug use, singling it out as a matter deserving of special attention. Said the judge: "In speaking about the testimony of the defendant, *I want to bring your attention to a specific point.*" And then he went on to say that "in deciding whether [it] want[ed] to believe or disbelieve" appellant, the jury could consider that appellant had "testified that he had been a user of narcotics." To be sure, the judge added that the jury did not *have* to consider appellant's prior drug use in appraising his credibility ("you may consider that factor, if you believe it is appropriate"). But a judge does not escape error by telling a jury that it may follow him in error but it doesn't have to. The judge also added that "the use of narcotics may not be considered as evidence of his [appellant's] guilt in this case." But no one had suggested that appellant's prior use of narcotics was evidence of his guilt. The issue was whether it could be evidence of his truthfulness. In telling the jury that it could be, the judge misstated the law.

The judgment of sentence should be reversed, and the case remanded for new trial.