J-S01039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| | : |
| Appellee | : |
| | : |
| v. | : |
| | : |
| SHAHID PARHAM, | : |
| | : |
| Appellant | : No. 66 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 18, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015369-2013

BEFORE:  BOWES, J., KUNSELMAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:                **FILED APRIL 7, 2020**

Shahid Parham (Appellant) appeals *nunc pro tunc* from the judgment of sentence[1] of 32 to 64 years of incarceration imposed after he was found guilty in a non-jury trial of robbery, burglary, conspiracy, possession of an instrument of crime (PIC), and several firearms offenses.  We affirm.

The charges arose out of the September 10, 2013 armed robbery of the victim, Dwayne Davis.  During a struggle over Appellant's gun, Davis gained control of the weapon and fired at both Appellant and his  co-

_____

[1] We note that Appellant purported to appeal from the October 1, 2015 order, which granted a motion for continuance of a hearing on Appellant's motion for reconsideration of sentence.  "In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions."  **Commonwealth v. Shamberger**, 788 A.2d 408, 410 (Pa. Super. 2001) (citation omitted).  We have corrected the caption accordingly.

* Retired Senior Judge assigned to the Superior Court.

conspirator, Muhammad Munson, wounding Appellant and killing Munson.

The trial court provided the following factual background.

> Davis testified that on the afternoon of September 10, 2013, he was inside his home on the 2600 block of Carroll Street in the city of Philadelphia, with his one[-]year[-]old daughter and her babysitter, Rakita Davis [Rakita].[10] At approximately 10:00 that morning, Davis received a phone call from an individual who was interested in purchasing one of his watches. He told that individual to come to his house, go around back, and come in through the kitchen door.
>
> _____
> [10] Rakita Davis and Dwayne Davis are not related.
>
> At approximately 11:30 a.m.[,] there was a knock at the back door and Davis let Appellant and [] Munson, into the kitchen. On entering, Appellant walked towards the dining room while Munson stayed by the back door. Once inside, Appellant pulled out a silver revolver and pointed it at Davis, saying "you know what time it is old head?" [N.T. 4/9/2015, at 28, 63.] After an exchange of words, Munson punched Davis in the eye, knocking him to the ground. As he attempted to stand up, Appellant hit him in the head with the gun, saying "don't move." [*Id.* at 64.]
>
> After another exchange of words, Appellant aimed the gun at Rakita[,] who was holding the baby. To "defend his family[,]" Davis pinned Appellant against the wall as Rakita ran upstairs, holding Davis's baby. [*Id.*] Appellant, pinned against the wall by Davis, fired a shot through the wall. In response, Davis grabbed Appellant by the wrist and twisted his arm until the gun fell to the ground. Davis testified that he retrieved the gun from the ground while Appellant jumped on his back. Davis then fired two shots under his left arm. Davis fired an additional two shots towards the back door as Appellant and Munson fled out the back door. Davis testified that at that time he did not know where the shots went or if anyone had been hit.
>
> After Appellant and Munson left, Davis went upstairs to check on Rakita and his daughter[,] who were hiding upstairs in a bedroom. Davis, Rakita, and the baby were driven by a friend to another friend's house[,] where they waited for Davis's wife. When his wife arrived, he told her to take their daughter to a

hotel. Davis stayed at his friend's house and later met up with his wife and daughter at the hotel. At no point did Davis return back to his house.

Davis testified that he did not immediately call the police because he had never been put in this type of situation and "was just scared." [*Id.* at 70.] Davis received a phone call the day after the shooting from his friend, Philadelphia Police Officer Kaliv Ivy. During their conversation, Davis told Officer Ivy what happened at his house the day before and was made aware that "Homicide" was looking for him. Davis told Officer Ivy that he needed a day or so to calm down but would go to [the police station] with him the next day.

Officer Ivy testified that he found out about the shooting the day after [it occurred] when he arrived at work. He recognized the house where the shooting occurred as Davis's [residence]. He called Davis to inform him that "Homicide" wanted to speak with him about what had happened since the body of Munson had been found in his backyard. Officer Ivy testified that Davis told him he was "shook up" and needed a day or so to calm down. [*Id.* at 71.] The following day[,] Officer Ivy accompanied Davis to [the police station] where he gave a statement about what happened at his home two days earlier. While giving his statement[,] Davis learned for the first time that a dead body had been found in his back yard.

Philadelphia Police Officer David Cartagena testified that on the afternoon of the robbery, he responded to a radio call of a shooting in the 2600 block of Massey Street in the city of Philadelphia.[11] On arriving at the corner of Massey Street and Dicks Avenue[,] he observed Appellant lying on the sidewalk, on his right side,[12] suffering a gunshot wound. On approaching Appellant, Officer Cartagena spoke with Appellant but found Appellant to be [] uncooperative. Appellant told Officer Cartagena he was shot in the back but would not tell him where it happened, who he was with, or anything about what had happened. At no time during this interaction[] did Appellant indicate to Officer Cartagena that there had been an altercation at Davis's home or that someone else had been shot.

_____

[11] Massey Street is located parallel to Carroll Street where Davis's residence is located.

- 3 -

[12] This corner is approximately a block from Davis's residence.

Trial Court Opinion, 4/16/2019, at 3-5 (some quotation marks and citations to record omitted; some name designations and capitalization altered).

Based on the foregoing, Appellant was arrested and charged with twelve offenses: one count each of aggravated assault, robbery, burglary, conspiracy, attempted theft, PIC, simple assault, recklessly endangering another person (REAP), and four firearms offenses. A non-jury trial took place on April 9, 2015, where Davis, Rakita, and Officers Ivy and Cartagena testified as indicated *supra*. The trial court found Appellant guilty of robbery, burglary, conspiracy, PIC, firearms not to be carried without a license, prohibited possession of a firearm, and possession of firearm by a minor.[2]

A sentencing hearing was held on June 18, 2015. After the court heard testimony from a Philadelphia police officer, as well as Appellant's mother and father, acknowledged receipt of the pre-sentence investigation (PSI) report, and heard argument from the parties' counsel, it sentenced Appellant to an aggregate term of incarceration of not less than 32 nor more than 64 years.[3]

---

[2] The trial court found Appellant not guilty of aggravated assault. The Commonwealth *nolle prossed* the remaining charges.

[3] The trial court sentenced Appellant to the following consecutive terms of incarceration: 8 to 16 years for robbery; 8 to 16 years for burglary; 8 to 16
*(Footnote Continued Next Page)*

On June 23, 2015, Appellant filed a timely post-sentence motion for reconsideration of his sentence, raising claims that the trial court never convicted him of burglary, that his sentence "far exceeded the recommended guideline range," and that the court improperly considered, over his counsel's objection, the "irrelevant and unfairly prejudicial testimony" of a police officer who suggested Appellant was part of a "dangerous street gang." Motion for Reconsideration of Sentence, 6/23/2015, at ¶¶ 1-4. Following a hearing on October 22, 2015, the motion was denied.[4] On November 10, 2015, Appellant filed a motion for extraordinary relief, seeking reconsideration of the denial of his post-sentence motion. The trial court took no action on this motion.

*(Footnote Continued)* ————————

years for conspiracy to commit robbery; 2 to 4 years for PIC, 2 to 4 years for firearms not be carried without a license; 2 to 4 years for prohibited possession of a firearm; and 2 to 4 years for possession of firearm by a minor. On March 13, 2019, and March 21, 2019, the trial court filed corrected sentencing orders to correct linkage of the sentence. All conditions and the effective date of sentence remained the same. Order 3/13/2019, at 1 (unnumbered); Order, 3/21/2019, at 2 (unnumbered).

[4] The notes of testimony from the hearing are not contained in the certified record. The record does not contain an order denying Appellant's post-sentence motion, but the docket contains an entry on the same date as the hearing, which provides as follows: "Order Denying Motion for Extraordinary Relief. The defense post-trial motion for extraordinary relief is heard and denied." Docket, 10/22/2015. As discussed *infra*, Appellant later filed a motion for extraordinary relief on November 10, 2015, but no such motion had been filed as of October 22, 2015. Thus, it appears from the record that the October 22, 2015 docket entry mistakenly stated it denied the motion for extraordinary relief, instead of the motion for reconsideration of sentence.

On March 4, 2016, Appellant filed a notice of appeal with this Court, which we quashed on February 13, 2018, as untimely filed. *Id.* (unpublished memorandum at 7). On June 25, 2018, Appellant filed a petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, seeking reinstatement of his right to a direct appeal. After a hearing on December 12, 2018, the PCRA court granted Appellant's petition. This timely-filed direct appeal followed.[5] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant has set forth two issues for our review. We begin with Appellant's sufficiency-of-the-evidence challenge. *See* Appellant's Brief at 14-16. According to Appellant, the Commonwealth failed to present sufficient evidence of "his contemporaneous intent of committing a crime once he was freely admitted into the home" of Davis to support his burglary conviction. *Id.* at 14.

We review this issue mindful of the following.

> When reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a

_____

[5] On June 20, 2019, this Court dismissed the instant appeal due to the failure of Appellant's counsel to file a brief. By order filed July 12, 2019, we reinstated the appeal.

reasonable doubt, the sufficiency of the evidence claim must fail. This standard applies equally where the Commonwealth's evidence is circumstantial.

In conducting this analysis, we do not weigh the evidence and substitute our judgment for that of the fact-finder. Additionally, the Commonwealth's evidence need not preclude every possibility of innocence in order to prove guilt beyond a reasonable doubt. The fact-finder is free to believe all, part, or none of the evidence.

*Commonwealth v. Knox*, 219 A.3d 186, 195 (Pa. Super. 2019) (internal citations and quotation marks omitted).

Appellant was charged with burglary under subsection 3502(a)(1) of the Crimes Code, which provides as follows.

**(a) Offense defined.--**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1)(i) enters a building or occupied structure, or separately secured or occupied portion thereof, that is adapted for overnight accommodations in which at the time of the offense any person is present and the person commits, attempts or threatens to commit a bodily injury crime therein;

(ii) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present;

18 Pa.C.S. § 3502(a).

A defense to the prosecution for burglary is that "[t]he actor is licensed or privileged to enter." 18 Pa.C.S. § 3502(b)(3). However, "the license or privilege to enter exception recognized by the burglary statute can be negated [if it is acquired] by deception[.]" ***Commonwealth v.***

*Edwards*, 903 A.2d 1139, 1148 (Pa. 2006), *citing* **Commonwealth v. Thomas**, 561 A.2d 699, 705 (Pa. 1989); **see also Commonwealth v. Hayes**, 460 A.2d 791, 796-77 (Pa. Super. 1983) (holding defendant's deceit in gaining entrance to house vitiated any consent to enter, and thus defendant was not licensed or privileged to enter under burglary statute). "Thus, to prevail on a burglary charge, the Commonwealth is required to prove beyond a reasonable doubt that the offender entered the premises, with the contemporaneous intent of committing a crime, at a time when he was not licensed or privileged to enter." **Commonwealth v. Cooper**, 941 A.2d 655, 666 (Pa. 2007). "The specific intent to commit a crime necessary to establish the intent element of burglary may be found in a defendant's words or conduct, or from the attendant circumstances together with all reasonable inferences therefrom." **Commonwealth v. Eck**, 654 A.2d 1104, 1108-09 (Pa. Super. 1995) (citations omitted).

In the instant case, the trial court concluded that the Commonwealth proved beyond a reasonable doubt that Appellant committed the offense of burglary. Trial Court Opinion, 4/16/2019, at 5-7. According to the trial court, Appellant deceived Davis to gain entry into his home, and Appellant's words and conduct made it clear that he entered the home with the intent to commit a crime. **Id.** at 6-7.

On appeal, Appellant argues that he lacked specific intent to commit a crime because he had come to Davis's home "by mutual agreement to

purchase a watch" and Davis "welcomed the two boys [Appellant and Munson] into his home." Appellant's Brief at 15. Further, Appellant contends that before "the interaction quickly went awry," there was no evidence to suggest "that anything more was planned that evening[6] than commerce" at an "appointed time." *Id.* According to Appellant, the totality of these circumstances "give[s] rise to the idea that, on the night in question, a horrible series of events unfolded but there was no initial intent to commit a burglary." *Id.* at 16.

It is undisputed that Davis invited Appellant into his home. Therefore, we first examine whether Davis's permitting Appellant to enter his home was vitiated by the nature of how he gained entry. We find *Edwards* instructive in that regard. In *Edwards*, Edwards went to the victim's home, claiming to have money to settle a drug debt, but his actual purpose was to gain entry into the residence to kill the victim. Edwards argued on appeal that he could not be convicted of burglary because the victim allowed him into the home. Our Supreme Court rejected his claim, explaining that the deceptive nature of the entry negated any license or privilege to enter. 903 A.2d at 1148.

Similarly here, the evidence showed that Appellant went to Davis's home claiming he wanted to buy a watch, but his actual purpose was to gain entry into the home to steal from Davis. N.T., 4/9/2015, at 59-60 (trial

---

[6] The incident occurred midday. N.T., 4/9/2015, at 59, 140-41.

testimony of Davis); *see also* Trial Court Opinion, 4/16/2019, at 6 (trial court, as factfinder, stating "Davis testified at trial that he allowed both [Appellant and Munson] into his home to sell them a watch and not for any other purpose. Although [] Davis voluntarily admitted both [Appellant and Munson] into his home, he did so under the impression they were buying a watch"). Thus, there was sufficient evidence to lead to the reasonable inference that Davis granted Appellant access to his home for a "seemingly legitimate reason," when in fact Appellant entered so that he could commit a crime. *See Cooper*, 941 A.2d at 667. Accordingly, we discern no error in the trial court, sitting as trier of fact, finding beyond a reasonable doubt that Appellant gained entry into Davis's home by deception, thereby negating Davis's permission to enter.

Next, we examine the intent element of burglary. The trial court found that Appellant's words and conduct established his intent to commit a crime. Once Appellant was inside Davis's home, he pointed a gun at Davis's torso, placed his hand on Davis's chest, and said, "You know what time it is, old head." N.T., 4/9/2015, at 28, 63. This evidence, along with Appellant's deceptive entry into the home, supports the conclusion that Appellant possessed the specific intent to commit a crime at the time he entered Davis's home. *See Eck*, 654 A.2d at 1109.

Based on the foregoing, we discern no error and agree with the trial court that the Commonwealth proved the elements of burglary beyond a reasonable doubt. Thus, Appellant is not entitled to relief on this claim.

Appellant next challenges the discretionary aspects of his sentence. *See* Appellant's Brief at 16-19. We consider this issue mindful of the following.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

> * * *

> When imposing [a] sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. DiClaudio*, 210 A.3d 1070, 1074-75 (Pa. Super. 2019) (quoting *Commonwealth v. Antidormi*, 84 A.3d 736, 760-61 (Pa. Super. 2014)). "A sentencing court may consider any legal factor in determining that a sentence in the aggravated range should be imposed." *Commonwealth v. Bowen*, 975 A.2d 1120, 1122 (Pa. Super. 2009) (citations omitted). "In addition, the sentencing judge's statement of reasons on the record must reflect this consideration, and the sentencing

judge's decision regarding the aggravation of a sentence will not be disturbed absent a manifest abuse of discretion." *Id.*

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

> > (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*DiClaudio*, 210 A.3d at 1075 (quoting *Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa. Super. 2014)).

Appellant has satisfied the first three requirements: he timely filed a notice of appeal *nunc pro tunc*, preserved his issues in a post-sentence motion, and included a Pa.R.A.P. 2119(f) statement in his brief. *See* Appellant's Brief at 12. Therefore, we now consider whether Appellant has raised a substantial question for our review.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*DiClaudio*, 210 A.3d at 1075 (citations and quotation marks omitted).

- 12 -

In his Pa.R.A.P. 2119(f) statement, Appellant contends the "trial court erred in double-counting [Appellant's] prior record score and offense gravity score." Appellant's Brief at 12. An assertion that the trial court "relied on factors already taken into account in determining [an appellant's] prior record score and offense gravity score" raises a substantial question. *Commonwealth v. Goggins*, 748 A.2d 721, 731 (Pa. Super. 2000) (citations omitted). Thus, we review the merits of Appellant's claim.

Specifically, Appellant argues that his prior record does not provide a basis for imposing an aggravated-range sentence because his prior record has already been taken into account by the sentencing guidelines. Appellant's Brief at 17. He argues that he is being "punished twice, first for his acts as a child and again [] for his actions in the present matter." *Id.* at 18. According to Appellant, the trial court's statement that Appellant is "a violent person whose violence is deeply ingrained" was an impermissible factor, since the sentencing guidelines already account for this. *Id.* at 18-19. He also argues that his sentence does not take into account his "relative youth." *Id.*

At sentencing, the court heard testimony from Philadelphia Police Officer Matthew York, who was assigned to the South Philadelphia Gang Task Force. The task force is a program "implemented to run focused deterrence" and "combat … intercity gangs and violence." N.T., 6/18/2015, at 47. Officer York's work included identifying and classifying gang members. *Id.*

at 48. He testified about Appellant's affiliation with one of the largest and most violent gangs in Philadelphia. *Id.* at 51-67. The court also heard testimony of Appellant's mother and father, argument from the parties' counsel, and Appellant's allocution.

The court offered sufficient, valid reasons for imposing the sentences it did. At sentencing, defense counsel argued that the court should impose an aggregate sentence of 5½ to 11 years, followed by probation, which he argued was reflective of the most serious conviction, robbery. The trial court responded as follows.

> THE COURT: What about all of the other offenses? I mean, does he get a discount for committing seven crimes at once? I mean, it's not just robbery, it's a burglary. It's the worst kind of robbery.
>
> ***
>
> … [W]hen people can't feel safe in their own homes -- I mean, you go out on the street, you go for a walk, you expect to be safe, but depending on the neighborhood, you're taking a chance, the time of day. But in your own home, I can't think of a more serious type of robbery.
>
> ***
>
> So we have to sentence him on the robbery. We also have to sentence him on the burglary. He did this with another man. He might not have done it by himself. If it was just him versus the complainant, he might not have taken the chance, but this was a conspiracy, it's an additional crime. And then there's the weapon, and he violated the gun laws every way he could. We have without a license, prohibited person who's still a minor. So I'm just letting you know I'd be very unlikely to sentence him to the guidelines for one offense and forget about everything else.

N.T., 6/18/2015, at 70-71. The court further stated that Appellant "doesn't do very well on supervision. He doesn't do all that great in custody either, apparently…. He should be kept in prison until he's mature enough to make better decisions." *Id.* at 71.

After hearing testimony from Appellant's mother and father, Appellant gave the following allocution.

> [APPELLANT]: I apologize to my family. I apologize to the Court. That's all.
>
> To the complainant, I apologize.
>
> [DEFENSE COUNSEL]: Thank you, Your Honor.
>
> [PROSECUTOR]: No questions.
>
> THE COURT: All right. The record should indicate that [Appellant] apparently forgot [to apologize to] the complainant until his lawyer leaned over and whispered in his ear, which is fine, I mean, you're sitting there so that you can give him counsel. But apologies to the complainant, to the Court, to me, I mean, they don't carry a whole lot of weight. I guess it's nice to hear.
>
> [DEFENSE COUNSEL]: Just for the record, we did discuss that, and he did apologize in the room, but obviously, when you get up here, you're nervous, you forget. He's young.
>
> THE COURT: That's what I said, he forgot about the complainant.

*Id.* at 87-88.

The trial court then offered the following explanation for the imposition of sentence.

> THE COURT: [Appellant], as I look at your record and I look at the seriousness of this offense, and there are some offenses where it's almost impossible to simply say, okay, we'll give you another chance. The reason is, you're too violent. We give you

- 15 -

another chance, you hurt somebody, you rob somebody, you shoot somebody. That's the risk we're taking if we give you another chance.

Can you think of any reason why I should send you home in a few years as opposed to keeping you in close custody for twenty, thirty years until you are a mature man who maybe, maybe will stop shooting people, stop robbing people? Any reason you can think of why I should do that?

[APPELLANT]: I made a mistake.

THE COURT: [Defense counsel], any way you want to elaborate upon that?

[DEFENSE COUNSEL]: Sure. Because, Your Honor, the reason you should do that is this, giving him a sentence that I propose, five and a half to eleven years --

THE COURT: Your proposal is absurd. We give people five and a half when they plead guilty to much less serious crimes than this. So you can forget about the five and a half to something.

What I'm thinking is that he's twenty or thirty years away from being mature enough to stay out of trouble. Even if he gets out of jail at 50, he'll say to himself, you know, I don't have that much time left, maybe I should stay out of trouble. But I don't think if he gets out of jail at 25 he's going to have that thought.

\*\*\*

[Appellant], I've considered the presentence report…[,] … the arguments of counsel, the testimony presented. I think that you are a violent person whose violence is deeply ingrained. It may or may not be your fault. That was the way you were brought up. It was the people you were surrounded by. But I'm firmly convinced that when you go back on the street, you will repeat. The only question is whether you go back on the street sooner or later. For the protection of the community, to deter other people who think that being a gangster at 24th and Tasker [Streets] is a good thing, I'm sentencing you [as stated *supra*].

*Id.* at 88-90.

Additionally, the trial court emphasized in its opinion that "it felt [Appellant] was at serious risk for recidivism. In reviewing [Appellant's] criminal history, the court noted a pattern of criminal activity and gang affiliation." Trial Court Opinion, 4/16/2019, at 8. Further, the court found Appellant "showed no acceptance of responsibility or remorse for his acts, [which was] further illustrated by counsel having to remind him to apologize to the complainant." *Id.* *See Commonwealth v. Begley*, 780 A.2d 605, 644 (Pa. 2001) (noting lack of remorse, as a sign of the defendant's character, is an appropriate consideration for sentencing outside of the guidelines). The court "determined that by running the sentences consecutively, [Appellant] would have more time for reflection and rehabilitation." *Id.*

In sum, the trial court's determination was not manifestly unreasonable, or the product of partiality, prejudice, bias, or ill-will. The trial court reviewed Appellant's PSI report, and thus was aware of all relevant sentencing factors. *Commonwealth v. Baker*, 72 A.3d 652, 663 (Pa. Super. 2013). Moreover, the trial court considered Appellant's age, lack of maturity, extensive violent criminal history, which includes an adjudication for attempted murder at the age of 11, and lack of remorse in evaluating Appellant's propensity for violence, high risk for recidivism, and lack of amenity to rehabilitation. N.T., 6/18/2015, at 70-71, 87-90. These considerations are permissible and differentiate from factors enumerated in

the sentencing guidelines. Accordingly, we do not agree that the trial court double-counted any factors or abused its discretion in fashioning Appellant's sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/7/2020